THOMAS ORSI *v.* JAMES ORSI ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Submitted on briefs November 2—decided December 7, 1938.

*George W. Crawford,* for the appellant (plaintiff).

*Louis Sachs, Joseph I. Sachs* and *Manuel S. Sachs,* for the appellees (defendants).

MALTBIE, C. J.   The plaintiff and the defendant James Orsi, to whom we shall hereafter refer as the defendant unless otherwise indicated, are brothers. The plaintiff, in so far as the issues before us are concerned, sought to secure relief based upon the ground that the defendant, by misrepresentation and improper advantage taken of the plaintiff, had obtained from him a conveyance of certain real estate which the defendant had thereafter conveyed to the other defendant without consideration and for the purpose of preventing the plaintiff from procuring a reconveyance.   Both defendants filed general denials.   Upon the trial the facts as found by the trial court presented issues much broader in scope than those apparent upon the face of the pleadings.   The trial court gave judgment for the defendant and the plaintiff has appealed.

The essential facts found are as follows: The defendant was in partnership with another man in the conduct of a restaurant in New Haven.   In 1927 the partnership was dissolved and in the contract of dissolution the defendant agreed for a period of ten years not to engage in the restaurant business within one

mile of the restaurant which the partnership had been conducting. Shortly thereafter, through another person, he purchased and paid for a vacant lot almost across the street from that restaurant. This was in pursuance of a plan to open a restaurant there which was to be conducted by himself and another man without his openly appearing in the business, a plan by which he believed he could successfully avoid the restrictive covenant in the contract of dissolution if the title of the property was in someone other than himself. The title was first taken in the name of one Falletta, but the land was subsequently conveyed to the plaintiff. Later the defendant gave up this plan and embarked in the restaurant business in another part of the city. He thereafter secured a tenant for the lot who utilized it as a filling station. The lease was signed by the plaintiff, as was a later modification of it. The plaintiff also executed a power of attorney to the defendant to enable him to manage the property and collect the rents. The defendant expended substantial sums of money to make the premises useful to the tenant, collected and retained all rents as his own and was in exclusive control of the property. In 1930 the plaintiff became ill; he and the defendant had always been on terms of mutual loyalty and confidence; and the plaintiff came to the home of the defendant. Thereafter he stayed at the defendant's house or in convalescent homes for a time; then he entered the Hartford Retreat and from there was committed to the Connecticut State Hospital for the Insane. The defendant was appointed conservator of his estate and so remained until the plaintiff recovered his sanity and was discharged from custody in 1935. On August 28, 1930, the plaintiff executed and delivered a quitclaim deed of the property to the defendant. At that time he was in a nervous condition but his

health had improved somewhat over what it had been. He understood the nature of the act he was doing and his illness had not progressed to such a point as to interfere with or cloud that understanding. The conveyance was voluntary, proceeded from his own wish and was not the result of influence or persuasion on the part of the defendant.

The plaintiff's claims may be summed up as follows: The plaintiff acquired an incontestable title to the property because of the purpose of the defendant to utilize it in avoidance of the legal obligation of the restrictive covenant in the contract for the dissolution of the partnership and because the conveyances of the title to the plaintiff, being really those of the defendant, and the acceptance by the latter of the power of attorney to manage the property, estop him from contesting the plaintiff's title; the subsequent deed of the land from the plaintiff to the defendant was so affected by improper influence and breach of a confidential relationship as to destroy its validity; hence the plaintiff has an equitable title to the land and is entitled to a reconveyance.

The description in the finding, only the portions of which essential to present the legal issues before us we have stated, of the way in which the defendant manipulated the title to the property in order to accomplish his purposes in disregard of his legal obligations certainly does not commend him in the eyes of the law. However, speaking of the principle that he who comes into equity must come with clean hands, we have said: "The maxim 'only applies to the particular transaction under consideration, for the court will not go outside the case for the purpose of examining the conduct of the complainant in other matters or question his general character for fair dealing. The wrong must be

done to the defendant himself and must be in regard to the matter in litigation.'" *Lyman* v. *Lyman,* 90 Conn. 399, 406, 97 Atl. 312; *LaFrance* v. *LaFrance,* 122 Conn. 556, 559, 191 Atl. 334. "Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case." *Yale Gas Stove Co.* v. *Wilcox,* 64 Conn. 101, 128, 29 Atl. 303; *LaFrance* v. *LaFrance,* supra, 560. The principle where it applies does not give or confirm title but exhausts itself in preventing a party from asserting in court a title where, in order to do so, he must rely upon a transaction tainted with illegality or inequity. *Finnegan* v. *LaFontaine,* 122 Conn. 561, 570, 191 Atl. 337.

Whatever may have been the origin of the plaintiff's title or however much the transaction which resulted in the conveyance to him may have been in pursuit of an illegal purpose, if the deed of the land from him to the defendant was a voluntary act on his part not vitiated by misrepresentations, improper influences or the breach of a confidential relationship, that purpose cannot be taken into consideration, for in such an event the defendant would not need to base his claim to retain the property upon the tainted transaction but could rest it upon the voluntary character of the conveyance made to him. So, if it be admitted that the conveyance of title to the plaintiff and the acceptance of the power of attorney by the defendant could create an estoppel which would prevail over the equities of the situation, still, if the deed from the plaintiff to the defendant was valid, the plaintiff would take no benefit from the estoppel, for it could, at most, only confirm his title before he made the deed, a title which he could voluntarily convey to the defendant if he chose. The

case then turns upon the validity of the deed from the plaintiff to the defendant.

The plaintiff attacks the finding of the court that at the time the deed was made the plaintiff knew and understood the nature of the act he was performing, that his illness had not progressed to such a point as to interfere with or cloud that understanding and that the act was voluntary on his part, proceeded from his own wish and was not the result of influence or persuasion brought to bear upon him by the defendant. There was testimony in the case supporting these findings either directly or by reasonable inference from evidential facts and nothing in the subordinate facts found, with such corrections as we could make, would render unreasonable the conclusion to which the trial court came. The plaintiff also claims that the close relationship by blood, and by trust and confidence, between the brothers was such as to vitiate the deed as one founded upon a breach of a confidential relationship. Assuming that the relationship between the plaintiff and the defendant was of such a nature as to make applicable the principles of law governing transactions between persons in a confidential relationship, that relationship does not "raise an inference of fraud; it is a circumstance to be considered with all the others in determining the fairness and good faith of the transaction." *Setaro* v. *Pernigotti,* 105 Conn. 685, 687, 136 Atl. 571. Nothing in the record indicates that the trial court failed to give due weight to the relationship between the parties in determining whether the transaction was one which really represented the free will and intent of the plaintiff or was the result of improper advantage taken of him by the defendant. We cannot hold upon this record that the deed from the plaintiff to the defendant was not a valid conveyance of the title nor find error in the conclusion of the trial court

that the situation was not one where the plaintiff had a right to avoid the transaction.

There is no error.

In this opinion the other judges concurred.