GEORGE A. THOMPSON, TRUSTEE *v.* DAVID
ORCUTT ET AL.
(SC 16398)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued April 20—officially released August 7, 2001

*Bruce S. Beck,* for the appellants (named defendant et al.).

*Clifton E. Thompson,* for the appellee (plaintiff).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the Appellate Court properly concluded that the doctrine of clean hands[1] did not apply in this mortgage foreclosure action. The defendants, David Orcutt

---

[1] The clean hands doctrine, also referred to as the doctrine of unclean hands; *Bauer* v. *Waste Management of Connecticut, Inc.,* 239 Conn. 515, 525, 686 A.2d 481 (1996); derives from "the equitable maxim that he who comes into equity must come with clean hands." (Internal quotation marks omitted.) *DeCecco* v. *Beach,* 174 Conn. 29, 34, 381 A.2d 543 (1977); accord *Gelinas* v. *West Hartford,* 225 Conn. 575, 587, 626 A.2d 259 (1993) ("[o]ne who seeks equity must also do equity and expect that equity will be done for all" [internal quotation marks omitted]).

and Sandra Orcutt,[2] appeal from the judgment of the Appellate Court, reversing the judgment of the trial court, which had applied the clean hands doctrine to preclude the plaintiff, George A. Thompson,[3] from foreclosing on the mortgage on their property. The defendants claim that the Appellate Court improperly determined that the clean hands doctrine did not apply. We agree with the defendants and reverse the judgment of the Appellate Court.

The opinion of the Appellate Court summarizes the following facts and procedural history. "The plaintiff commenced this action against the defendants to foreclose on a mortgage that secured a note, the original balance of which was $25,000. The note was signed by the defendant David Orcutt as president of Alpha Equipment Sales and Rentals, Inc., and by the defendants individually and severally.[4] The note was secured by a mortgage (Thompson mortgage) on property owned by the defendants known as 95 Greenwood Drive in Manchester, which mortgage was the subject of the foreclosure action. Although the plaintiff claimed that he was the trustee of that mortgage for himself and Jack L. Rosenblit, a business associate, no written trust agreement existed. [See footnote 3 of this opinion.]

"The mortgaged premises were subject to three encumbrances superior to the Thompson mortgage: A first mortgage to the New Haven Savings Bank in the

---

[2] Several parties holding subordinate liens on the property were also joined as defendants in the foreclosure action. They have not joined in this appeal. For purposes of this appeal, references herein to the defendants are to David Orcutt and Sandra Orcutt.

[3] Although the plaintiff filed this action in his capacity as trustee for his business partnership with Jack L. Rosenblit, who also held a one-half interest in the mortgage on the defendants' property, the trial court found that the alleged trust relationship was "nothing more than a sham . . . ." That finding is not an issue in this appeal.

[1] The plaintiff also named Alpha Equipment Sales and Rentals, Inc., as a defendant, but it was defaulted for failure to appear.

amount of $60,000, a second mortgage in favor of the Connecticut Bank and Trust Company in the amount of $35,000 and a lien in favor of Northeast Financial Services (Northeast) [in the amount of $32,712]. The principals of Northeast were the plaintiff and Rosenblit, and [although] the debt securing the mortgage to Northeast [had been] paid prior to the creation of the Thompson mortgage, [the lien] had not been released.

"In January, 1992, the plaintiff filed a voluntary petition in [chapter 7] bankruptcy in the United States Bankruptcy Court for the District of Connecticut, listing as an asset a one-half interest in the Thompson mortgage. The bankruptcy court appointed [a bankruptcy trustee to administer the bankruptcy] estate." *Thompson* v. *Orcutt*, 59 Conn. App. 201, 202–203, 756 A.2d 332 (2000).[5]

During the pendency of the bankruptcy case, the plaintiff represented to the bankruptcy trustee that the property securing the Thompson mortgage was "encumbered in excess of its value . . . ." On the basis of that representation, the bankruptcy trustee abandoned the Thompson mortgage as an asset of the bankruptcy estate because it "[did] not justify further administration." See 11 U.S.C. § 554 (a) (bankruptcy trustee may abandon property of estate "that is burdensome to the estate or that is of inconsequential value and benefit to the estate").

"In their answer to the foreclosure complaint, the defendants admitted the existence of the debt and the execution of the loan agreement and mortgage deed, but filed a special defense asserting that the plaintiff was 'guilty of unclean hands' insofar as he had induced the bankruptcy trustee to abandon the [Thompson

---

[5] Although the trial court granted the defendants' motion to join the bankruptcy trustee, John J. O'Neil, Jr., as a plaintiff in this case, he subsequently was defaulted and is not a party to this appeal. See *Thompson* v. *Orcutt*, supra, 59 Conn. App. 203 n.3.

mortgage]." *Thompson* v. *Orcutt,* supra, 59 Conn. App. 204. The trial court concluded that the plaintiff had committed "misrepresentation or fraud" in the bankruptcy case. The trial court determined that because the misrepresentation or fraud concerned the Thompson mortgage, and that mortgage was the subject of the plaintiff's foreclosure action, the clean hands doctrine could apply. Although the trial court recognized that the clean hands doctrine generally applies only where "the wrong [has been] done to the party against whom [affirmative] relief is sought," and the plaintiff's conduct in this case had occurred in the bankruptcy court, the trial court determined that the plaintiff's misrepresentation or fraud in the bankruptcy case involved an important public interest that justified a broader application of the doctrine. Accordingly, the trial court applied the clean hands doctrine, denied the relief sought by the plaintiff, and rendered judgment for the defendants. In addition, the trial court ordered the plaintiff to release the Northeast lien.

Thereafter, the plaintiff appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had applied the doctrine of unclean hands.[6] The Appellate Court concluded that "the wrong committed [by the plaintiff] was with respect to the bankruptcy proceeding and not the mortgage transaction," and, therefore, the doctrine of unclean hands did not preclude him from recovering in this case. Id., 205–206. The Appellate Court determined that the trial court had applied the doctrine improperly because "[t]he wrong alleged and

---

[6] The plaintiff also claimed that the trial court improperly had: (1) found that there had been no trust agreement between the plaintiff and Rosenblit; (2) ordered the plaintiff to release the Thompson mortgage note; (3) ordered the plaintiff to release the Northeast lien; (4) found that Rosenblit should be subjected to the unclean hands doctrine; (5) ignored the appearance filed by the bankruptcy trustee; and (6) ordered the plaintiff to release the Thompson mortgage. The Appellate Court did not address these claims; *Thompson* v. *Orcutt,* supra, 59 Conn. App. 204 n.5; and neither do we.

found by the trial court to exist in this case concerned the plaintiff's misleading [the bankruptcy trustee] into believing that there was no equity in the mortgaged premises to satisfy the debt owed by the defendants" on the Thompson mortgage note, and there had been "no fraud or deception with regard to the mortgage transaction" between the plaintiff and the defendants. Id., 206–207. Furthermore, the Appellate Court declined to apply the public policy exception to the doctrine of unclean hands. Id., 206 n.7.

We granted the defendants' petition for certification to appeal limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly hold that the doctrine of clean hands did not apply?" *Thompson* v. *Orcutt*, 254 Conn. 934, 761 A.2d 758 (2000). Following oral argument before this court, we sua sponte ordered the trial court to articulate its judgment with respect to the application of the doctrine of unclean hands. Specifically, we directed the trial court to respond to the following questions: "(1) Was the basis for the plaintiff's unclean hands (a) misrepresentation, or (b) fraud? (2) If the basis was misrepresentation, what was the nature of the misrepresentation, e.g., intentional, negligent or innocent? [and] (3) In either event, what was the evidentiary basis of the finding of misrepresentation or fraud?"

Thereafter, the trial court, after conducting a hearing on the order for articulation in accordance with Practice Book § 66-5,[7] issued an articulation, in which it found "by clear and convincing evidence that the plaintiff committed fraud . . . ." The trial court determined that the plaintiff had "lied to the [bankruptcy] trustee" with

---

[7] Practice Book § 66-5 governs motions for articulation and provides in relevant part that "[i]f any party requests it and it is deemed necessary by the trial court, the trial court shall hold a hearing at which arguments may be heard, evidence taken or a stipulation of counsel received and approved. . . ."

respect to the value of his interest in the Thompson mortgage, because he had represented to the trustee that the property had been " 'encumbered in excess of its value.' " The trial court found that, at the time the plaintiff had filed for bankruptcy, there had been enough equity in the property to satisfy the prior encumbrances and the Thompson mortgage.[8] The trial court further found that the plaintiff, one of the two partners in Northeast, had known that the Northeast lien, which had priority over the Thompson mortgage, had been paid in full but not released. The trial court concluded that, had the plaintiff informed the trustee of that fact, the Thompson mortgage would not have been abandoned as an asset of the bankruptcy estate.

After the trial court submitted its articulation, we sua sponte granted the parties an opportunity to file simultaneous supplemental briefs in response thereto. The defendants filed a supplemental brief; the plaintiff did not.

---

[8] Based on testimony at trial that the market value of the property subject to the Thompson mortgage in 1990 had been $147,200, the trial court used an annual depreciation rate of 4 percent, which was derived from the testimony of the plaintiff's expert appraiser, and found that the fair market value of the property during the first year of the plaintiff's bankruptcy case would have been approximately $135,000. The trial court noted that that figure was consistent with the testimony of the plaintiff's appraiser who estimated the value of the property in 1999 to be $103,000. Deducting $95,000, which represented the face amount of the two priority encumbrances, and disregarding the Northeast lien, which had been paid in full but not released, the trial court found that there had been $40,000 in equity in the property in 1992, more than enough to satisfy the full amount of the $25,000 Thompson mortgage.

It is noteworthy that with interest on the Thompson mortgage note, which originally had been 24 percent, and the late payment charges, the outstanding debt on the Thompson mortgage note had risen to approximately $34,000 in January, 1992, the month that the plaintiff filed for bankruptcy protection. At the time of trial in this case, the indebtedness had increased to more than $60,000.

## I

As a threshold matter, the defendants claim that the Appellate Court improperly employed the plenary standard of review, rather than reviewing the trial court's decision to apply the doctrine of unclean hands for an abuse of discretion. We disagree.

This court has recognized that "[a]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court." *A & B Auto Salvage, Inc.* v. *Zoning Board of Appeals*, 189 Conn. 573, 578, 456 A.2d 1187 (1983); accord *Cohen* v. *Cohen*, 182 Conn. 193, 196, 438 A.2d 55 (1980) ("[i]t is clear that [the doctrine of unclean hands] is to be applied . . . by the court in the exercise of its sound discretion"); *DeCecco* v. *Beach*, 174 Conn. 29, 35, 381 A.2d 543 (1977) ("[t]he maxim should be applied in the trial court's discretion"). "The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 809, 695 A.2d 1010 (1997).

Whether the trial court properly interpreted the doctrine of unclean hands, however, is a legal question distinct from the trial court's discretionary decision whether to apply it. Cf. *Babcock* v. *Bridgeport Hospital*, 251 Conn. 790, 820, 742 A.2d 322 (1999) ("[p]rovided the trial court properly interpreted the [law], a question over which this court has plenary review . . . [the trial court's] decision [to grant or deny a discovery request] will be reversed only if such an order constitutes an abuse of [its] discretion" [citation omitted]). Although

the Appellate Court recognized that " '[t]he trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the court's integrity dictate that the clean hands doctrine be invoked' "; *Thompson* v. *Orcutt*, supra, 59 Conn. App. 205, quoting *Polverari* v. *Peatt*, 29 Conn. App. 191, 202, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 166 (1992); it determined, in essence, that the question whether the clean hands doctrine may be interpreted to apply to the facts found by the trial court in this case involved an issue of law. *Thompson* v. *Orcutt*, supra, 204. Accordingly, because the Appellate Court addressed the trial court's legal conclusions with respect to the scope of the clean hands doctrine, it properly engaged in a plenary review to discern whether the trial court's conclusions were legally and logically correct and supported by the facts appearing in the record. *Anderson Consulting, LLP* v. *Gavin*, 255 Conn. 498, 511, 767 A.2d 692 (2001).

II

The defendants next claim that the Appellate Court improperly determined that the doctrine of unclean hands did not apply in this case. First, the defendants contend that the Appellate Court improperly determined that the plaintiff's bankruptcy fraud regarding the Thompson mortgage was not " 'in regard to the matter in litigation' " for applying the doctrine of unclean hands. See *Lyman* v. *Lyman*, 90 Conn. 399, 406, 97 A. 312 (1916). Second, although the defendants acknowledge that the clean hands doctrine generally requires that the alleged prior wrong must have been directed toward their interests, rather than toward those of a third party, they claim that the Appellate Court improperly refused to apply the doctrine on broader policy grounds. In contrast, the plaintiff maintains that the Appellate Court properly determined that the clean hands doctrine did not apply in this case.

A

Before addressing these claims, we note that an action to foreclose a mortgage is an equitable proceeding. *OCI Mortgage Corp.* v. *Marchese*, 255 Conn. 448, 464, 774 A.2d 940 (2001); *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 30, 730 A.2d 1128 (1999). "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 536, 710 A.2d 757 (1998). "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Citation omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 525, 686 A.2d 481 (1996).

Because the doctrine of unclean hands exists to safeguard the integrity of the court; *Eldridge* v. *Eldridge*, supra, 244 Conn. 536; *Pappas* v. *Pappas*, 164 Conn. 242, 246, 320 A.2d 809 (1973); "[w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." (Internal quotation marks omitted.) *Samasko* v. *Davis*, 135 Conn. 377, 383, 64 A.2d 682 (1949). The doctrine generally "applies [only] to the particular transaction under consideration, for the court will not go outside

the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing. The wrong must . . . be in regard to the matter in litigation. . . . Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case." (Citation omitted; internal quotation marks omitted.) Id.; see also *Keystone Driller Co.* v. *General Excavator Co.*, 290 U.S. 240, 245, 54 S. Ct. 146, 78 L. Ed. 1045 (1933) (courts "do not close their doors because of [a] plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication"); *Orsi* v. *Orsi*, 125 Conn. 66, 70, 3 A.2d 306 (1938) (clean hands doctrine prevents "a party from asserting in court a title where, in order to do so, he must rely upon a transaction tainted with illegality or inequity"). In addition, the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine, rather than the interests of a third party. *Orsi* v. *Orsi*, supra, 69–70 ("[t]he wrong must be done to the defendant himself and must be in regard to the matter in litigation" [internal quotation marks omitted]).

### B

The defendants first claim that the Appellate Court improperly determined that, in order for the clean hands doctrine to apply, the fraud had to relate to the mortgage transaction at issue in the present case. The defendants maintain that, as long as the plaintiff requires the fraud to make out his case, the doctrine can apply. They contend that the fraud need not directly relate "to the precise transaction giving rise to the claim," and argue

that if the plaintiff requires the fraudulent conduct or transaction to establish a cause of action, the clean hands doctrine may apply. The plaintiff maintains that the defense of unclean hands should not apply in mortgage foreclosure actions unless the allegedly wrongful conduct relates "to the making, enforcement or validity of" the mortgage note. The plaintiff contends that, because the Thompson mortgage transaction was not premised on fraud, the Appellate Court properly determined that the clean hands doctrine could not apply. We agree with the defendants.

This court has addressed the scope of the doctrine of unclean hands and, as noted previously, if a party's claim "grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief . . . ." (Internal quotation marks omitted.) *Samasko* v. *Davis*, supra, 135 Conn. 383. Indeed, this court has applied the doctrine to preclude a litigant from recovering in equity if his or her conduct has been inequitable with respect to the subject of the action. See *Pappas* v. *Pappas*, supra, 164 Conn. 246 (applying clean hands doctrine to preclude plaintiff in action to recover property from son; plaintiff had committed perjury in separate dissolution proceeding with respect to character of transfer of property to son; equity that plaintiff sought was "directly and inseparably connected" with prior perjury); see also *Salzman* v. *Bachrach*, 996 P.2d 1263, 1269 (Colo. 2000) ("[C]ourts apply [doctrine of unclean hands] only when a plaintiff's improper conduct relates in some significant way to the claim he [or she] now asserts. Otherwise, only those leading pristine and blameless lives would ever be entitled to equitable relief.").

The trial court in this case determined that, for the purposes of applying the clean hands doctrine, the plaintiff's fraud in the bankruptcy proceeding regarding the Thompson mortgage directly related to the foreclo-

sure action. The Appellate Court concluded, however, that "the wrong found by the [trial] court on which it based its conclusion that the plaintiff did not have clean hands was with regard to the bankruptcy matter, not the Thompson mortgage that is the subject matter of the present litigation." *Thompson* v. *Orcutt*, supra, 59 Conn. App. 206. The Appellate Court determined that the defendants "should not benefit by any wrong committed by the plaintiff [in] the bankruptcy court because to allow them to do so would have the effect of penalizing the creditors of the plaintiff's bankruptcy estate . . . ." Id., 207.

Under the circumstances of the present case, we conclude that the plaintiff's cause of action to foreclose on the mortgage was "directly and inseparably connected" to his prior fraud on the bankruptcy court. *Pappas* v. *Pappas*, supra, 164 Conn. 246; *Samasko* v. *Davis*, supra, 135 Conn. 383. "[A] foreclosure complaint must contain certain allegations regarding the nature of the interest being foreclosed." (Internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 610, 717 A.2d 713 (1998); see *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256 n.11, 708 A.2d 1378 (1998) (noting that "a mortgagee in Connecticut is deemed to have taken legal title under the execution of a mortgage on real property" subject to equitable rights of redemption). In this case, the plaintiff alleged in his complaint that he had title to the Thompson mortgage, an allegation that the defendants denied. Thus, the plaintiff's title to the Thompson mortgage was a contested issue in the foreclosure action.

The plaintiff's alleged ownership of the Thompson mortgage herein would not have existed had he not lied to the bankruptcy trustee and withheld information concerning the Northeast lien. The original transaction creating the Thompson mortgage was not tainted with fraud, but the plaintiff's ability to foreclose on the defen-

dants property in this case depended upon his fraudulent conduct in the bankruptcy proceeding. If the Thompson mortgage had been administered as an asset of the bankruptcy estate, the plaintiff would have had no means of bringing this foreclosure action. See *Samasko v. Davis*, supra, 135 Conn. 383; *Orsi v. Orsi*, supra, 125 Conn. 69–70. The plaintiff perpetrated the fraud in the bankruptcy court in order to retain title to the Thompson mortgage; he would have had no cause to foreclose on the Thompson mortgage without the fraud. See *Samasko v. Davis*, supra, 383. Accordingly, we conclude that the Appellate Court improperly determined that the plaintiff's fraud in the bankruptcy matter was unrelated to the foreclosure action.

## C

The defendants next claim that the Appellate Court improperly refused to apply the clean hands doctrine on broad policy grounds. Emphasizing that the trial court found by clear and convincing evidence that the plaintiff had committed fraud in the bankruptcy court, the defendants claim that this case implicates the important public policy of precluding litigants from profiting from their own fraudulent conduct. The plaintiff contends that the Appellate Court properly refused to apply the doctrine on the grounds of public policy because the defendants "failed to show . . . that [he] violated a public policy." We agree with the defendants.

This court has recognized that the doctrine of unclean hands "is not one of absolutes . . . ." *Cohen v. Cohen*, supra, 182 Conn. 204; *DeCecco v. Beach*, supra, 174 Conn. 35. It "is not a judicial straightjacket." *Cohen v. Cohen*, supra, 204. Because the doctrine is "founded on public policy, [it] may be relaxed on that ground . . . ." Id.; see also *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 15, 92 S. Ct. 1411, 31 L. Ed. 2d 658 (1972), quoting *Precision Co. v. Automotive Co.*, 324 U.S. 806,

815, 65 S. Ct. 993, 89 L. Ed. 1381 (1945) ("[w]here a suit in equity concerns the public interest as well as the private interests of the litigants, [the doctrine of unclean hands] assumes even wider and more significant proportions" [internal quotation marks omitted]); *Dunlop-McCullen* v. *Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) ("doctrine of unclean hands also may be relaxed if [the] defendant has been guilty of misconduct that is more unconscionable than that committed by [the] plaintiff" [internal quotation marks omitted]).

The trial court concluded that the public interest was implicated in this case because "fraud was perpetrated on the bankruptcy court trustee who was acting on behalf of the United States Bankruptcy Court in fulfilling a congressionally mandated duty of collecting [and administering] property of the [plaintiff's bankruptcy] estate." The trial court recognized that the Thompson mortgage had been listed as an asset on the plaintiff's bankruptcy schedules and that, if the plaintiff had not fraudulently induced the bankruptcy trustee to abandon it, it would have been property of the bankruptcy estate. The trial court recognized that concealing assets and making false statements in bankruptcy matters are federal crimes; see 18 U.S.C. §§ 152 and 157; and it reasoned that permitting the plaintiff to foreclose on the mortgage would "reward the very misconduct [that] Congress has found to be abhorrent and against the public policy of the United States . . . ." The Appellate Court determined, however, that "the representations made to the federal court in the bankruptcy proceeding [did] not involve a public interest so great as to necessitate application of the [public policy] exception" to the general rule governing the doctrine of unclean hands that the wrong must be done to the party against whom relief is sought. *Thompson* v. *Orcutt*, supra, 59 Conn. App. 206 n.7.

We conclude that the fraud committed by the plaintiff in the bankruptcy court implicates an important public interest that justifies the application of the doctrine of unclean hands on public policy grounds. "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, [and] have their foundation in universal law administered in all civilized countries . . . ." (Internal quotation marks omitted.) *Bird* v. *Plunkett*, 139 Conn. 491, 496–97, 95 A.2d 71 (1953); cf. *Solomon* v. *Gilmore*, 248 Conn. 769, 785, 731 A.2d 280 (1999) ("[i]n case any action is brought in which it is necessary to prove [an] illegal contract in order to maintain the action, courts will not enforce [the contract], nor will they enforce any alleged right directly springing from such contract" [internal quotation marks omitted]); *Billington* v. *Billington*, 220 Conn. 212, 222–23, 595 A.2d 1377 (1991) (marital dissolution agreements constituting "fraud on the court . . . [are] contrary to public policy and unenforceable").

In this case, the plaintiff's fraud in bankruptcy court allowed him to retain an interest in the Thompson mortgage.[9] If the plaintiff had not lied to the bankruptcy trustee and had not withheld the information that the Northeast lien had been paid but not released, the Thompson mortgage would have been liquidated as an asset of the bankruptcy estate and administered accordingly. The plaintiff's entire cause of action to foreclose the mortgage in this case is premised on that fraud. Although the Appellate Court reasoned that, were there

---

[9] We emphasize that, although the plaintiff had an opportunity to respond to the trial court's articulation regarding its finding of fraud, he did not do so. Therefore, we are bound by the trial court's factual findings. *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 762, 674 A.2d 1313 (1996) (trial court's factual findings binding on this court unless clearly erroneous in light of all evidence).

any equity in the property, the bankruptcy trustee "could petition the bankruptcy court to exercise its powers to open the bankruptcy case"; *Thompson* v. *Orcutt*, supra, 59 Conn. App. 206 n.8; and the plaintiff emphasizes that the trustee has taken no such action,[10] it is doubtful whether the trustee could achieve any practical benefit from petitioning the bankruptcy court to open the case.[11] It is equally clear that fraudulent conduct in bankruptcy cases violates the policy of the federal government, which is vested with plenary authority over bankruptcy matters.[12] Indeed, fraudulent conduct in any proceeding arising under the Bankruptcy

[10] The plaintiff claims that "[i]t is very important to note that [although] the bankruptcy trustee was made a party to this matter and has had ample opportunity to reopen [the plaintiff's] bankruptcy file based on the allegations of fraud," the trustee has failed to do so.

[11] We note that, although the bankruptcy court enjoys broad power to reopen a case that has been closed; see 11 U.S.C. § 350; the Thompson mortgage, because it was abandoned by the bankruptcy trustee, was no longer property of the bankruptcy estate. 11 U.S.C. § 554; *Correll* v. *Equifax Check Services, Inc.*, 234 B.R. 8, 11 (D. Conn. 1997) (property of bankruptcy estate not abandoned by trustee remains property of estate). The bankruptcy trustee, therefore, not only would be required to open the case, but also would have to petition the bankruptcy court to revoke the plaintiff's discharge in bankruptcy. See 11 U.S.C. § 727 (d); *In re Covino*, 245 B.R. 162, 170 (Bankr. D. Idaho 2000) ("[r]evocation of discharge is an extraordinary remedy [and] is a penalty . . . not lightly invoked by the [c]ourt"). Moreover, revocation based on fraud under 11 U.S.C. § 727 (e) (1) and (2) is subject to strict time limits—one year after discharge and one year after discharge or the date that the case is closed, whichever is later, respectively. See *In re Boyd*, 243 B.R. 756, 763, 766 (Bankr. N.D. Cal. 2000) ("bankruptcy code and rules do not contemplate equitable tolling [of time limits for seeking revocation] because of a debtor's fraud"; party seeking revocation "cannot use fraud allegations as a way to obtain authority to administer . . . funds after the time limit for revoking discharge has expired"). Although the record before this court does not disclose the date of the plaintiff's bankruptcy discharge, it is safe to assume that, because the bankruptcy case was commenced in 1992, the opportunity to seek a revocation of the discharge has long since passed, and accordingly, the bankruptcy trustee successfully could not seek relief in that forum.

[12] Article one, § 8, of the constitution of the United States provides in relevant part: "The Congress shall have Power To . . . establish . . . uniform Laws on the subject of Bankruptcies . . . ."

Code is punishable by a term of imprisonment of up to five years. 18 U.S.C. § 157. If this court were to allow the relief sought by the plaintiff in this case, we, in effect, would be condoning that very fraud. See *Pappas* v. *Pappas*, supra, 164 Conn. 247. Accordingly, we conclude that the Appellate Court improperly reversed the trial court's application of the doctrine of unclean hands, on public policy grounds, to bar the plaintiff from maintaining this foreclosure action.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the plaintiff's remaining claims.

In this opinion the other justices concurred.