******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHELSEA GROTON BANK *v.* BELLTOWN
SPORTS, LLC, ET AL.
(AC 42709)

Alvord, Elgo and Beach, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property
owned by the defendants. The defendants had obtained a loan from the
plaintiff, secured by the mortgage, to build a sports facility but, due to
construction delays, the facility had a late opening and did not generate
enough revenue for the defendants to meet their mortgage obligations.
As part of the mortgage transaction, the defendants agreed to obtain a
small business loan, which would thereafter be used to pay down the
mortgage debt. In order to receive the small business loan, the plaintiff
certified that there was no significant changes in the defendants' finan-
cial status, despite its knowledge that the defendants had no working
capital to be profitable. The defendants received the small business
loan; however, they had already defaulted on the mortgage payments
and the plaintiff commenced the foreclosure proceedings. The trial court
thereafter rendered a judgment of foreclosure by sale, from which the
defendants appealed, claiming that the plaintiff's certification of the
defendants' financial status for the small business loan, when it knew
that the defendants had no ability to make mortgage payments, consti-
tuted misconduct relating to the mortgage, and that the trial court
improperly found that the defendants' claims of inequitable conduct did
not relate to the mortgage. *Held* that the defendants could not meet
their burden of proving an evidentiary basis to establish the existence
of a genuine issue of material fact regarding their unclean hands special
defense and, therefore, the trial court properly determined that the
plaintiff's alleged misconduct failed to sufficiently relate to the making,
validity, or enforcement of the mortgage; the defendants failed to allege
any conduct by the plaintiff that would have challenged the plaintiff's
legal authority to bring the foreclosure action, the defendants conceded
that the plaintiff had the right to commence foreclosure on the ground
that the defendants defaulted on their mortgage debt, the requirement
that the defendants obtain a small business loan to pay down the mort-
gage debt had been contemplated and agreed to in the original loan
documents, and the plaintiff's alleged actions pertaining to the small
business loan were not directly and inseparably connected to the foreclo-
sure action, as the small business loan was separate and distinct from
the mortgage.

Argued March 3—officially released July 28, 2020

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty of the named defendants et al., and for other relief,
brought to the Superior Court in the judicial district of
Middlesex where the court, *Domnarski, J.*, granted the
plaintiff's motion for judgment of foreclosure by sale
and rendered judgment thereon, from which the named
defendants et al. appealed to this court. *Affirmed.*

*Patrick W. Boatman*, with whom, on the brief, was
*Jenna N. Sternberg*, for the appellants (named defen-
dants et al).

*Brian D. Rich*, with whom was *Anthony E. Loney*,
for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendants Belltown Sports, LLC (Belltown Sports), Sports on 66, LLC (Sports on 66), and Brian Cutler appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Chelsea Groton Bank.[1] On appeal, the defendants claim that the court improperly (1) rendered summary judgment as to liability in favor of the plaintiff and (2) concluded that the priority of a Small Business Administration (SBA) loan does not bar the plaintiff's right to foreclose on its mortgage.[2] We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On April 15, 2015, Belltown Sports executed a promissory note (note) payable to the plaintiff in the principal amount of $3,000,000. In order to secure the note, Belltown Sports executed an open-end mortgage deed (mortgage) in favor of the plaintiff on real property located at 265 West High Street in East Hampton (property). Contemporaneous with the execution of both the note and the mortgage, Sports on 66 and Brian Cutler executed a guarantee in which they agreed to pay the debt secured by the note and the mortgage. The loan proceeds were used to construct a 42,000 square foot sports facility (facility) on the property. The facility contains indoor turf fields, floating wood basketball courts, batting cages, and a party room.

The defendants also had signed a commitment letter with the plaintiff, which included, among other things, a requirement that, within forty-five to sixty days upon the issuance of a certificate of occupancy, the defendants obtain a loan in the amount of $1,118,150 from the Community Investment Corporation, a lender who provides assistance to Connecticut businesses and is backed by the SBA (SBA loan). The proceeds of the SBA loan were to be paid to the plaintiff in order to reduce the mortgage debt to $1,881,850.

Pursuant to the building loan agreement (agreement) signed by the plaintiff and the defendants on April 15, 2015, the facility was scheduled to be completed by April 1, 2016. Due to several issues that arose during construction, however, the facility was completed approximately eight months late and the grand opening took place on December 17, 2016. Following the grand opening, the plaintiff reminded the defendants of their obligation to obtain the SBA loan. To do so, the defendants were required by the SBA to satisfy any liens and other financial obligations associated with the property, except for the mortgage. To that end, on April 14, 2017, the plaintiff completed an interim lender certification form, wherein it stated that it had "no knowledge of any unremedied substantial adverse change in the condition of [the] [b]orrower and [the o]perating [c]ompany

(if any) since the date of [the] loan application to [the] [i]nterim [l]ender. [The] [b]orrower is current on its payments to [the] [i]nterim [l]ender and not otherwise in default on the [i]nterim [l]oan." Because the plaintiff completed the certification and the defendants satisfied all financial obligations associated with the property, the funds of the SBA loan were released to the plaintiff on May 22, 2017. Prior to that release, however, the defendants had defaulted on their obligation to pay the note, mortgage, and guarantee.

The plaintiff commenced this mortgage foreclosure action on September 26, 2017. The defendants filed their answer and special defenses on December 1, 2017. Specifically, the defendants alleged as special defenses: (1) foreclosure of the plaintiff's mortgage could only be in the amount of $360,000, the total funds advanced by the plaintiff at the closing of the mortgage and (2) the plaintiff acted with unclean hands in its representations to the SBA that there had been no material adverse change in the defendants' financial status and in its representations to the defendants that it would provide a line of credit.

On June 11, 2018, the plaintiff filed a motion for summary judgment as to liability, which was accompanied by a memorandum of law in support of the motion, an affidavit, and appended exhibits, including the mortgage and the note. The defendants filed a memorandum of law in opposition to the plaintiff's motion for summary judgment and an affidavit of Brian Cutler on August 8, 2018. Shortly thereafter, the plaintiff filed a reply to the defendants' opposition to the motion for summary judgment on August 23, 2018. The hearing on the plaintiff's motion took place on August 27, 2018.

Following that hearing, this court decided *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 196 A.3d 328 (2018). In light of that decision, the trial court ordered, sua sponte, the parties to file supplemental briefs on its impact on the pending motion for summary judgment. Only the defendants filed a supplemental brief.

Subsequently, on November 16, 2018, the court granted the plaintiff's motion for summary judgment as to liability. On February 26, 2019, the court rendered a judgment of foreclosure by sale. This appeal followed. Additional facts will be set forth as necessary.

The defendants claim that (1) their special defense of unclean hands "properly raise[d] a genuine issue of material fact sufficient to deny summary judgment," and (2) the court improperly concluded that the special defense "failed to relate to the mortgage being foreclosed." We disagree.

We begin by setting forth the relevant standard of review and applicable legal principles. "In seeking summary judgment, it is the movant who has the burden

of showing the nonexistence of any issue of fact. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . A material fact is one that makes a difference in the outcome of a case. . . .

"Summary judgment shall be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"Appellate review of the trial court's decision to grant summary judgment is plenary. . . . [W]e must [therefore] decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense. . . .

"[A] holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under [General Statutes § 49-17]. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights. . . .

"[T]he party raising a special defense has the burden of proving the facts alleged therein. . . . If the plaintiff in a foreclosure action has shown that it is entitled to foreclose, then the burden is on the defendant to produce evidence supporting its special defenses in order to create a genuine issue of material fact . . . . Legally sufficient special defenses alone do not meet the defendant's burden. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . Further . . . [t]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings. . . . [B]ecause any valid special defense raised by the defendant ultimately would prevent the court from rendering judgment for the plaintiff, a motion for summary

judgment should be denied when any [special] defense presents significant fact issues that should be tried. . . .

"Because an action to foreclose a mortgage is an equitable proceeding, the doctrine of unclean hands may be applicable. It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the *matter in litigation.* . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Citations omitted; emphasis added; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten,* supra, 184 Conn. App. 743–47.

"In mortgage foreclosure cases, courts require that a viable legal defense directly attack the making, validity or enforcement [of the note and mortgage]. . . . [S]pecial defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action." (Citation omitted; internal quotation marks omitted.) Id., 750–51. "[A]n equitable defense of unclean hands [however] need not strictly relate to the making, validity, or enforcement of the note or mortgage, provided the allegations set forth were *directly and inseparably connected* to the foreclosure action." (Emphasis added; internal quotation marks omitted.) Id., 753.

As previously noted, the defendants filed a memorandum of law in opposition to the plaintiff's motion for summary judgment and an affidavit of Brian Cutler attached thereto. Therein, they claimed that three specific acts by the plaintiff support the special defense of unclean hands: (1) before agreeing to lend the defendants $3,000,000, the plaintiff required that Cutler invest into the project all personal funds available to him from any source; (2) the plaintiff certified to the SBA that there was no material adverse change in the defendants'

financial status; and (3) the plaintiff represented that it would provide Cutler with additional financing through a $50,000 line of credit. The defendants did not argue, however, either that they were not in default or that the plaintiff did not have the right to foreclose the mortgage—to the contrary, the defendants admitted that they did not have the funds necessary to satisfy their mortgage obligations.

In its memorandum of decision, the court held that "the defendants' claims of inequitable conduct do not relate to the mortgage being foreclosed . . . . The essence of the defendants' claims is that, but for the inequitable conduct of the plaintiff, the defendants would not have proceeded with the transaction with SBA." The court continued: "It is not disputed that the . . . mortgage transaction contemplated that the defendants would enter into the . . . transaction with the SBA. The defendants' claim of unclean hands might be viable if the actions of the plaintiff *prevented* the defendants from entering into the contemplated SBA transaction, which, incidentally, substantially reduced their obligation to the plaintiff. The defendants have failed to establish a genuine issue of material fact as to how the foreclosure of the subject . . . mortgage could have been avoided if the [SBA] transaction *did not* go forward." (Emphasis in original.)

The following additional facts are relevant to our resolution of this claim. As previously noted, when the plaintiff agreed to loan the defendants $3,000,000 to fund the construction of the facility, the defendants agreed to obtain a loan from the SBA, in the amount of $1,118,150, which would be used to pay down the mortgage, pursuant to the mortgage document and the commitment letter. In order to obtain the SBA loan, however, the defendants were required to satisfy all liens and financial obligations associated with the property, including a mechanic's lien and vendor payments totaling $81,935.54. After the defendants satisfied their financial obligations with respect to the property, both the plaintiff and the defendants certified to the SBA that there had been no material adverse change in the defendants' financial status since the application for the original loan secured by the mortgage.

At the time of that certification, however, the defendants had no ability to pay the mortgage and had not provided complete financial information to the plaintiff as required by the loan documents. Additionally, the loan documents required the defendants to hire The Sports Facilities Advisory (SFA), a Florida based company that would develop a business plan for and manage the facility, including hiring a director. SFA, however, quit overseeing the project prior to its completion due to nonpayment. Last, because the facility opened behind schedule—eight months after the intended opening date—the defendants' revenue was substantially less

than was expected. Failure to (1) pay the mortgage, (2) provide complete financial information to the plaintiff, (3) employ SFA to oversee the facility, and (4) complete the construction of the facility by the due date all constitute default events as set forth in the loan documents, including the mortgage document. Furthermore, the mortgage provides that the failure to obtain the SBA loan, in and of itself, constitutes a default event on which the plaintiff may foreclose. Following the plaintiff's and the defendants' certification, the SBA provided the loan to the defendants, who advanced the proceeds from the SBA loan to the plaintiff. Shortly thereafter, the defendants made their June 1, 2017 payment on the SBA loan; however, the defendants failed to make payments toward the mortgage.

On appeal, the defendants argue that the plaintiff's misconduct is related to the mortgage because the "enforcement of a mortgage can include certain post-origination misconduct." To that end, the defendants rely on *TD Bank, National Assn.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 71 A.3d 541 (2013), *U.S. Bank National Assn.* v. *Eichten*, supra, 184 Conn. App. 727, and *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 212 A.3d 656 (2019). That reliance is misplaced. We address each decision in turn.

In *M.J. Holdings, LLC*, the defendants executed a promissory note that was secured by a mortgage on the defendants' interest in several properties. *TD Bank, National Assn.* v. *M.J. Holdings, LLC*, supra, 143 Conn. App. 324. Six years later, the plaintiff commenced foreclosure proceedings following the defendants' default on their loan. Id., 325. In response, the defendants raised several special defenses, including equitable estoppel and breach of a loan modification agreement. Id., 329. The defendants claimed that they had agreed to sell their property based on the promise by the plaintiff that, if the sale occurred and the plaintiff was provided with the net proceeds of the sale, it would modify the defendants' loans, including those subject to the foreclosure, which would have reduced the monthly debt and allowed the defendants to remain current on their obligations. Id., 325–26. The sale was completed and the full amount of the sale proceeds were forwarded to the plaintiff; however, the plaintiff refused to modify the loans and, instead, commenced foreclosure. Id., 326.

On appeal, this court's analysis focused on the decision of our Supreme Court in *Thompson* v. *Orcutt*, 257 Conn. 301, 311–14, 777 A.2d 670 (2001), stating: "In *Thompson*, our Supreme Court considered actions by the plaintiff subsequent to the execution of the note and mortgage—in particular, fraudulent conduct in a bankruptcy proceeding—to be 'directly and inseparably connected' to the foreclosure action to support the defendants' equitable defense of unclean hands. . . . In doing so, our Supreme Court found that [t]he original

transaction creating the . . . mortgage was not tainted with fraud, but the plaintiff's ability to foreclose on the defendants' property . . . depended upon his fraudulent conduct in the bankruptcy proceeding. If the . . . mortgage had been administered as an asset of the bankruptcy estate, the plaintiff would have had no means of bringing this foreclosure action. . . . The plaintiff perpetrated the fraud in the bankruptcy court in order to retain title to the . . . mortgage; he would have had no cause to foreclose on the . . . mortgage without the fraud. . . . Thus, although the actions constituting unclean hands occurred after the execution of the original loan documents, those actions directly impacted the enforceability of those loan documents." (Citations omitted.) *TD Bank*, *National Assn.* v. *M.J. Holdings*, *LLC*, supra, 143 Conn. App. 328–29. In light of that precedent, this court observed that, despite the fact that it was transacted after the execution of the original loan documents, the loan modification agreement would have allowed the defendants to remain current on their loan obligations. We concluded that "[the] allegations attack[ed] the validity or enforcement of the note and mortgage, which impact[ed] the plaintiff's ability to foreclose thereon, because the defendants alleged that the loan modification agreement would have allowed them to remain current on all their loan obligations." Id., 335.

In the present case, the defendants claim that there was an agreement with the plaintiff that, if the defendants obtained the SBA loan, then the plaintiff would provide them with a $50,000 line of credit "as a bridge loan to run [the] business." To the extent that such a promise was made, unlike in *M.J. Holdings*, *LLC*, the plaintiff's failure to follow through with that promise did not implicate or impact its ability to foreclose on the mortgage because the promise to extend credit to run the business is dissimilar to a promise to modify a loan. In other words, whether the plaintiff extended that credit would not have altered the defendants' obligations pursuant to the mortgage. Furthermore, the notion of extending a line of credit to the defendants only serves to increase their debt owed to the plaintiff, rather than to bring them current, as would have occurred in *M.J. Holdings*, *LLC*, had the agreed upon loan modification been effectuated. Additionally, obtaining the SBA loan and giving the proceeds of that loan to the plaintiff as required by the original loan documents, did not, in and of itself, substantially alter the financial status of the defendants—at the end of the transaction, they still owed $3,000,000.

Equally misplaced is the defendants' reliance on *U.S. Bank National Assn.* v. *Eichten*, supra, 184 Conn. App. 727. The defendants contend that this court in *Eichten* concluded that a defense of unclean hands did not have to relate to the making, validity, or enforcement of the loan at issue. Although the defendants' argument is

correct, it is incomplete.

In *Eichten*, the defendant raised several special defenses, including that "the plaintiff is guilty of unclean hands because, although she qualified for a [Home Affordable Modification Program] loan modification upon completion of her trial period payments, the plaintiff did not offer her a loan modification, but instead, placed her in a forbearance program without her consent." Id., 734. The defendant thus argued that there was a genuine dispute of material fact as to whether the plaintiffs had acted with unclean hands. This court agreed and concluded that "[t]he plaintiff's failure to establish that it adhered to the Treasury Department's directives, which appear to encourage that final determinations on whether to offer the borrower a loan modification be made before the end of the [trial period plan], and the plaintiff's failure to provide an explanation as to its apparent internal approval of the loan modification in March, 2011, which was not communicated to the defendant, create[d] a genuine issue of material fact as to whether the defendant can prevail on her special defense of unclean hands. When viewing the evidence in the light most favorable to the defendant, the unexplained length of time it took the plaintiff to deny the defendant an offer of a permanent modification, almost twenty months, commencing with the date it told her that the only way to explore modification of her loan was to stop paying in November, 2009, and ending with the date it denied her a modification, July 15, 2011, raise[d] the question of whether the plaintiff treated the defendant in a fair, equitable, and honest manner knowing that prolonged delay would place the defendant in an untenable financial situation, such that she could not possibly extricate herself to prevent foreclosure." Id., 749–50.

The plaintiff in *Eichten*, however, argued that the special defense was invalid because it did not relate to the making, validity, or enforcement of the note and mortgage. Id., 750. As in *M.J. Holdings, LLC*, this court's analysis was guided by our Supreme Court's decision in *Thompson* v. *Orcutt*, supra, 257 Conn. 301: "[B]ecause the doctrine of unclean hands exists to safeguard the integrity of the court . . . [w]here a plaintiff's claim *grows out of or depends upon or is inseparably connected* with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have. . . . [A]*n equitable defense of unclean hands need not strictly relate to the making, validity, or enforcement of the note or mortgage, provided the allegations set forth were directly and inseparably connected* to the foreclosure action." (Citation omitted; emphasis added; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten*, supra, 184 Conn. App. 753.

The court in *Eichten* thus concluded that it was "not

persuaded . . . that the defendant's unclean hands defense is invalid because it does not relate to the making, validity, or enforcement of the note. First, the defense of unclean hands . . . does not necessarily need to relate to the making, enforcement, or validity of the loan. Second, if the plaintiff did engage in fraudulent conduct by deliberately failing to communicate its internal approval of the loan modification, then that raises questions as to whether, but for this conduct, the plaintiff would have had the legal authority to bring [the foreclosure] action." Id.

Unlike in *Eichten*, the defendants allege no conduct on the part of the plaintiff that would have challenged the plaintiff's legal authority to bring this foreclosure action. On the contrary, as the defendants conceded during oral argument before this court, the plaintiff had the right to commence foreclosure on the grounds that the defendants defaulted on their mortgage. Moreover, the steps taken by the parties were contemplated and agreed to in the original loan documents—namely, that the plaintiff would loan the defendant $3,000,000 to construct the facility, that the defendants would make monthly payments on the mortgage, and that the defendants would obtain a loan from the SBA in order to help pay down the mortgage.

Last, the defendants rely on *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 656, for the proposition that the trial court wrongly rejected their unclean hands special defense. Specifically, they argue that the trial court improperly focused "on the SBA mortgage and not the [plaintiff's] loan. The standard articulated by [*Blowers*] makes clear that the focus is on the alleged misconduct of the mortgagee. As the definition of 'enforcement' includes allegations of certain harm resulting from a mortgagee's wrongful postorigination conduct, the fact that the alleged misconduct involved the creation of a second loan obligation should not be determinative." We disagree.

In *Blowers*, after the mortgagee had commenced foreclosure on the mortgage, the mortgagor filed several special defenses, including unclean hands. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 659. In support thereof, the mortgagor alleged that the mortgagee committed various acts, which occurred either after the mortgagor's default on the note or after the mortgagee had commenced the foreclosure action, which hindered his ability to obtain a loan modification and increased the debt amount. Id., 661. The mortgagee moved to strike the mortgagor's special defenses, claiming that they were unrelated to the making, validity, or enforcement of the note. Id., 662. The trial court granted that motion, concluding that the alleged misconduct had occurred following execution of the note and, therefore, the special defenses did not relate to the making, validity, or enforcement thereof. Id., 662–63. The mort-

gagor appealed to this court, which affirmed the judgment of the trial court. See *U.S. Bank National Assn.* v. *Blowers*, 177 Conn. App. 622, 172 A.3d 837 (2017), rev'd, 332 Conn. 656, 212 A.3d 226 (2019).

On appeal to our Supreme Court, the mortgagor challenged, among other things, the propriety of the making, validity, or enforcement test and the proper scope of the enforcement test thereunder. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 664. Our Supreme Court clarified that the making, validity, or enforcement test is "nothing more than a practical application of the standard rules of practice that apply to all civil actions to the specific context of foreclosure actions." Id., 667. The court agreed with the mortgagor that "a proper construction of 'enforcement' includes allegations of harm resulting from a mortgagee's wrongful postorigination conduct in negotiating loan modifications, when such conduct is alleged to have materially added to the debt and substantially prevented the mortgagor from curing the default." Id. The court observed that "appellate case law recognizes that conduct occurring after the origination of the loan, after default, and even after the initiation of the foreclosure action may form a proper basis for defenses in a foreclosure action." Id., 672. The court continued: "These equitable and practical considerations inexorably lead to the conclusion that allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforcement . . . . Such allegations, therefore, provide a legally sufficient basis for special defenses in the foreclosure action." (Citation omitted; internal quotation marks omitted.) Id., 675–76. On these grounds, the judgment was reversed and the case was remanded for further proceedings. Id., 678.

In the present case, the defendants outline in their brief the specific conduct of the plaintiff that they contend falls under the clarified test in *Blowers*. Specifically, they argue that the plaintiff falsely certified to the SBA that there were no significant changes in the defendants' financial status; the plaintiff was aware that the defendants did not yet have the necessary working capital to be profitable and needed additional financing; the plaintiff required that the defendants use all of their assets to obtain funding, to the point where there were no other assets available for the defendants to fall back on; and that the defendants only agreed to move forward with the SBA loan at the plaintiff's urging, provided that the defendants receive a line of credit. As a result of the plaintiff's conduct, the defendants argue that they incurred substantial additional costs to close the SBA loan, "which was used only to benefit" the plaintiff and that, had the plaintiff represented the

defendants' actual financial condition, the SBA would not have closed the loan. We are not persuaded.

First, as previously noted, the defendants also certified to the SBA that there were no significant changes in their financial status. Second, the defendants' argument that they were required by the plaintiff to use all of their assets prior to obtaining the subject loan and, then, were urged by the plaintiff to obtain the SBA loan only to pay down the mortgage are the terms that the defendants agreed to at the outset in the original loan documents. Third, to the extent that the defendants incurred substantial additional costs in order to close the SBA loan, there is no evidence connecting those costs with the plaintiff's conduct; in fact, those costs stem from the terms agreed to between the defendants and the SBA. Fourth, the defendants argue that, had the plaintiff represented to the SBA the actual financial status of the defendants, the SBA would not have closed the loan. That argument, even if true, is mere speculation. Moreover, had the plaintiff represented the defendants' true financial status, and had that representation precluded the issuance of the SBA loan, the defendants still would have remained in default, according to the terms of the mortgage, for nonpayment. Under either scenario, the plaintiff would have been well within its right to pursue foreclosure. Lastly, the plaintiff's alleged actions pertaining to the SBA loan are not *directly and inseparably connected* to the foreclosure action, as the SBA loan is separate and distinct from the mortgage.

Accordingly, the defendant's allegations were insufficient to fall within our Supreme Court's clarification of the making, validity, or enforcement test, as set forth in *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 675—namely, that "allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforcement of the note and mortgage." (Citation omitted; internal quotation marks omitted.) Because the defendants did not otherwise meet their burden of providing an evidentiary basis to establish the existence of a genuine issue of material fact regarding the unclean hands special defense; see *U.S. Bank National Assn.* v. *Eichten*, supra, 184 Conn. App. 745; their claim fails.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] Although the United States Small Business Administration and the Connecticut Department of Economic and Community Development also were named as defendants in this matter, they have not participated in this appeal. We, therefore, refer to Belltown Sports, Sports on 66, and Brian Cutler as the defendants throughout this opinion.

Belltown Sports is the owner of the property, Sports on 66 is the sole

tenant and manager of the property, and Cutler is the sole member of Belltown Sports and Sports on 66.

[2] Because we conclude that the defendants did not meet their burden of providing an evidentiary basis to establish the existence of a genuine issue of material fact regarding the unclean hands special defense, which the defendants acknowledge is "part and parcel" of their theory that the SBA mortgage should take priority over the plaintiff's right to foreclose on the mortgage, we decline to address the merits of their second claim.

_____