[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] REVISED MEMORANDUM OF DECISION RE: MOTION TO STRIKE #153 MOTION TO SEVER COUNTERCLAIM #152
On July 3, 2001, the court, Booth, J., issued a memorandum of decision (#158). granting in part and denying in part the plaintiff's motion to strike the special defenses (#153) to this mortgage foreclosure action (decision). The decision also granted the plaintiff's motion to sever the counterclaim from the foreclosure action (#152). On July 20, 2001, the plaintiff filed a motion to reargue the court's failure to address its motion to strike counts two, three, five and six of the counterclaim in its decision.[1] Because the motion to argue merely clarifies a factual misunderstanding of the scope of the plaintiff's motion to strike and does not question the court's legal analysis, the court denies the motion to reargue. The court, however, takes notice of the motion to reargue and, upon ascertaining the exact scope of the plaintiff's motion to strike — as represented by the plaintiff at the hearing before the court on June 4, 2001 — issues this revised memorandum of decisionin substitution of the one issued on July 3, 2001 (#158). The court's memorandum of decision of July 3, 2001 is withdrawn in its entirety.
 FACTS
On November 10, 1997, the plaintiff, Webster Bank, brought this mortgage foreclosure action against the defendant. Jane Gurtowsky Linsley, alleging the following facts.[2] On April 7, 1989, the defendant executed a promissory note for a loan of $123,700 payable to the order of Union Trust Company (Union Trust) in equal monthly installments of principal and interest. On the same date, the defendant executed a mortgage deed in favor of Union Trust, mortgaging a piece of real estate property, known as 520 Ward Street Extension, Wallingford, Connecticut (property), to secure the note. By an assignment, dated June 28, 1990, Union Trust assigned the note and mortgage to the plaintiff, then known as Derby Savings Bank. The plaintiff is now the record owner CT Page 11096 of the note and mortgage. The defendant defaulted on the installment payments due on December 1, 1996, and each month thereafter. The plaintiff elected to accelerate the payment of the balance of the entire debt, now in the amount of $113,684.58 plus interest accrued since November 1, 1996. late charges and collection costs. The defendant has not paid off the accelerated debt. On December 9, 1997, the plaintiff filed a motion for judgment of strict foreclosure and finding of entitlement to possession.
On July 24, 2000, the defendant filed a second amended answer, five special defenses and a six count counterclaim.[3] The plaintiff filed a motion to sever the counterclaim on May 4, 2001, the defendant filed an objection on May 9, 2001, and the plaintiff filed a reply to the objection on May 21, 2001.
On May 8, 2001, the plaintiff filed the present motion to strike the special defenses and the counterclaim, supported by a memorandum of law.[4] On May 23, 2001, the defendant filed an objection and a memorandum of law in opposition to the motion to strike. The parties appeared before the court on June 4, 2001, to argue the motions, at which time the plaintiff represented to the court that its motion to strike was limited to the fifth special defense and counts two, three, five and six of the counterclaim. The motion to strike is so treated by the court.
 DISCUSSION I MOTION TO STRIKE #153
"Whenever any parry wishes to contest . . . the legal sufficiency of . . . any special defense . . . that party max' do so by filing a motion to strike the contested pleading. . . ." Practice Book § 10-39; Nowakv. Nowak, 175 Conn. 112, 116, 394 A.2d 716 (1978). "A motion to strike admits all facts well pleaded." Parsons v. United Technologies Corp.,243 Conn. 66, 68, 700 A.2d 655 (1997). "A motion to strike is properly granted if the [pleading] alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v.BOC Group, Inc. 224 Conn. 210, 215, 618 A.2d 25 (1992). The role of the trial court in ruling on a motion to strike is to examine the pleading, construed in fax-or of the nonmoving party. here the defendant. to determine whether the pleading is legally sufficient. Napoletano v. CIGNAHealthcare of Connecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127
(1996), cert. denied, 520 U.S. 1103, 117 S.Ct. 1106, 137 L.Ed.2d 308
(1997). CT Page 11097
Before assessing the legal sufficiency of the specific special defense and the counts of the counterclaim subject to the motion to strike, the court will address first the defendant's attack on the plaintiff's statement, as a matter of case law relied on by the plaintiff, that a special defense to mortgage foreclosure is valid only if it attacks the making, validity or enforcement of the note and mortgage at issue in the foreclosure action.
"At common law, the only defenses to an action of [foreclosure] would have been payment, discharge, release or satisfaction . . . or, if there had never been a valid lien . . . Moreover, our courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had. . . . Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Citations omitted; internal quotation marks omitted.) SouthbridgeAssociates, LLC v. Garofalo, 53 Conn. App. 11, 15-16, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). In recognition that a foreclosure action is equitable in nature, courts have also allowed equitable estoppel, CUTPA, laches, breach of the implied covenant of good faith and fair dealing, tender of deed in lieu of foreclosure. a refusal to agree to a favorable sale to a third party. and lack of consideration to be pleaded as special defenses. See, e.g., Mercantile Bank v.Hurowitz, Superior Court, judicial district of New Haven at New Haven, Docket No. 381091 (May 2, 2000, Celotto, J.); Norwest Mortgage v.Edwards, Superior Court, judicial district of Ansonia-Milford at Milford. Docket No. 057496 (May 4, 1998, Curran, J.) (22 Conn. L. Rptr. 123, 124).
Numerous Superior Court decisions have held that equitable defenses to mortgage foreclosure are valid only if they address the making, validity or enforcement of the note and mortgage (principle of limitation). See, e.g., Mercantile Bank v. Hurowitz, supra; Dime Savings Bank of New York,FSB v. Furey, Superior Court judicial district of Ansonia-Milford at Milford, Docket No. 047557 (April 1, 1996, Curran, J.). "[The] special defenses [listed above] have been recognized as valid special defenses where they were legally sufficient and addressed the making. validity or enforcement of the mortgage and/or note. The rationale behind this is that . . . special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action. . . . Further, based on the same rationale, the defenses . . . cannot attack some act or procedure of the lienholder." Mercantile Bank v. Hurowitz, supra; DimeCT Page 11098Savings Bank of New York, FSB v. Furey, supra.
The defendant cites a few Supreme Court cases, such as Lettierri v.American Savings Bank, 182 Conn. 1, 12, 437 A.2d 822 (1980), and Hamm v.Taylor, 180 Conn. 491, 497, 429 A.2d 946 (1980), to support her argument that the principle of limitation is erroneous and that "a [c]ourt of equity should hear all claims and defenses relative to alleged inequitable conduct" of the mortgagee in a foreclosure action. The defendant relies on the maxim that "he who comes into equity must come with clean hands" to support her implicit argument that the court in a mortgage foreclosure action should consider any allegation of inequitable conduct of the mortgagee toward the mortgagor in their business relation, even though it is not related to the making. validity or enforcement of the note and mortgage at issue.
There is no merit to the defendant's attack on the well established principle of limitation in mortgage foreclosure. Contrary to the defendant's assertion, the Supreme Court has long held that equitable defenses to mortgage foreclosure must be limited to the making, validity or enforcement of the note and mortgage. See Boretz v. Segar,124 Conn. 320, 323-24, 199 A. 548 (1938) (equitable defense to mortgage foreclosure is limited to "the transaction under consideration" or "the matter in litigation"): see also Thompson v. Orcutt, 59 Conn. App. 201,205-206, 756 A.2d 332 (same), cert. granted on other grounds,254 Conn. 934, 761 A.2d 758 (2000).
In Orsi v. Orsi, 125 Conn. 66, 3 A.2d 306 (1938), the defendant was obligated under a lawful agreement not to compete with his former partner in the restaurant business within one mile of the restaurant for a period often years. He nevertheless purchased a vacant lot across the street from that restaurant with the intent to open a restaurant thereon under the name of the plaintiff, his brother. He conveyed the title to the lot to the plaintiff intending to achieve the illegal purpose of competing with his former partner. The defendant abandoned his plan, however, and the plaintiff conveyed the title back to the defendant. Thereafter, the plaintiff brought the action for reconvevance of the title back to him. arguing that the defendant should be estopped from contesting his "equitable" title to the property because the defendant's prior conveyance of the title to him was motivated by the illegal purpose.
The Supreme Court rejected his argument, finding it immaterial whether the original conveyance was motivated by the illegal purpose as long as the subsequent conveyance of the title was not vitiated by misrepresentations improper influences or the breach of a confidential relationship. Id., 70. The court affirmed the trial court's ruling that the original illegal purpose could not be taken into consideration CT Page 11099 because it did not "taint" the plaintiff's subsequent voluntary and knowing conveyance of the title to the defendant, which was the "matter in litigation" or "transaction under consideration" in the action for reconveyance. Id.
"The maxim [that he who comes into equity must come with clean hands] only applies to the particular transaction under consideration, for the court will not go outside the case for the purpose of examining the conduct of the complainant in other matters or question his general character for fair dealing. The wrong must be done to the defendant himself and must be in regard to the matter in litigation. Lyman v.Lyman, 90 Conn. 399, 406, 97 A. 312; LaFrance v. LaFrance, 122 Conn. 556,559, 191 A. 334. Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case. Yale Gas Stove Co. v. Wilcox, 64 Conn. 101, 128, 29 A. 303LaFrance v. LaFrance, supra, 560. The principle where it applies does not give or confirm title but exhausts itself in preventing a party from asserting in court a title where, in order to do so, he must rely upon a transaction tainted with illegality or inequity. Finnegan v. LaFontaine,122 Conn. 561, 570, 191 A. 337." (Emphasis added; internal quotation marks omitted.) Orsi v. Orsi, supra, 125 Conn. 69-70. The "matter in litigation" or "the transaction under consideration" in mortgage foreclosure is the making. validity and enforcement of the note and mortgage, and the default on the mortgage payment. on which the foreclosure action is based, not the general, unrelated conduct of the mortgagee. See Boretz v. Segar, supra, 124 Conn. 323-24; Thompson v.Orcutt, supra, 59 Conn. App. 205-206; PNC Bank v. Slodowitz, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 137057 (July 19, 1999, West, J.).
The Supreme Court cases cited by the defendant do not support the defendant's argument that equitable defenses to mortgage foreclosure are not subject to the principle of limitation. For instance, Lettierri v.American Savings Bank, supra, 182 Conn. 12, and Hamm v. Taylor, supra.180 Conn. 497, relied on by the defendant, simply reiterate the general principle that the trial court has equitable powers, on the basis of equitable considerations and principles, to deny foreclosure or decrease the amount of the stated indebtedness. They do not hold that the principle of limitation does not apply or that the court can deny foreclosure simply because the mortgagee has committed certain inequitable acts against the mortgagor, even if they are not related to the making. validity or enforcement of the note and mortgage.
The defendant's attack on the principle of limitation is without merit, and the court proceeds to assess the legal sufficiency of the CT Page 11100 special defense and the counts of the counterclaim subject to the motion to strike on the grounds specified and briefed by the plaintiff.
A. Fifth Special Defense
The fifth special defense asserts violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq. Specifically, the defendant alleges that the plaintiff failed to provide proper notice in violation of § 2605 and failed to provide proper notice of default and acceleration prior to the commencement of foreclosure as required under common law and RESPA. The defendant alleges further that the plaintiff failed to respond to her "qualified written requests," pursuant to § 2605(e). made in January and March, 1997, and thereafter, for information relating to the servicing of her loan.[5]
The defendant argues that the compliance with the RESPA provisions is a mandatory condition precedent to foreclosure and that the plaintiff is precluded from bringing or continuing this foreclosure action for its failure to comply with the RESPA provisions.
The court agrees with the plaintiff's argument that this special defense is legally insufficient because a violation of RESPA is not a valid defense to mortgage foreclosure. See, e.g., Security PacificNational Bank v. Robertson, Superior Court, judicial district of Stamford-Norwalk at Stamford. Docket No. 124622 (August 28, 1997,Hickey, J.). A violation of RESPA. by the terms of the act, does not discharge the debt or invalidate the note and mortgage and. therefore, does not provide a defense to foreclosure. See 12 U.S.C. § 2615
("[n]othing in this Act shall affect the validity or enforceability of . . . any loan, loan agreement, mortgage or lien made or arising in connection with a federally related mortgage loan").
As to the defendant's claim about the plaintiff's failure to satisfy a condition precedent to for closure for not providing notice of default and acceleration prior to foreclosure, she has not cited any authorities to support her claim that such notice is mandatory at common law. The court is aware of none. See 59 C.J.S 623-24, Mortgages § 511 (1998) (absent provision in the mortgage or required by a statute, the general rule is that the mortgagee need not give the mortgagor notice of its election to accelerate the maturity of the debt). Nor has she identified any provision of RESPA that requires the loan holder to send notice of default and acceleration as a mandatory' condition precedent to foreclosure to the borrower; the specified section of the statute,12 U.S.C. § 2605, contains no such notice requirement. The defendant's claim is thus a mere conclusion of law that is not supported by the facts alleged and is subject to the motion to strike. SeeNovametrix Medical Systems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215. CT Page 11101 The motion to strike the fifth special defense is granted.
B. Counterclaim
Among other grounds listed in the plaintiff's motion to strike, the plaintiff moves to strike counts two. three, five and six of the counterclaim on the ground that they' do not relate to the making, validity or enforcement of the note and mortgage.
"In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the same transaction or one of the transactions which is the subject of the plaintiff's complaint." Practice Book § 10-10. "Although some foreclosure proceedings rely on the equitable nature of the proceedings as grounds for allowing counterclaims . . . not recognized at common law . . . this trend must have its limitation. An analysis of those cases recognizing counterclaims suggests that they are proper only when they, like their common law counterparts. attack the note itself, rather than some act or procedure by the mortgagor. . . . Courts have not been receptive to foreclosure defendants who have asserted . . . counterclaims based on factors outside of the note or mortgage. . . . The making of the note and the . . . subsequent default is the "transaction at issue." (Internal quotation marks omitted.) The Frederick Corp. v. Scheckter, Superior Court, judicial district of Litchfield at Litchfield, Docket No. 084350 (April 26, 2001,Cremins, J.); Norwest Mortgage v. Edwards, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 057496 (May 4, 1998,Curran, J.) (22 Conn. L. Rptr. 123); Shoreline Bank Trust Co. v.Leninski, Superior Court, judicial district of New Haven at New Haven, Docket No. 335561 (March 19, 1993, Celotto, J.) (8 Conn. L. Rptr. 522). "As such, all counterclaims and cross claims must arise from or relate to the foreclosure action." (Internal quotation marks omitted.) PNC Bank v.Slodowitz, supra, Superior Court, Docket No. 137057.
1. Count Two
Count two of the counterclaim asserts a claim of violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §42-110a et seq. Specifically, this count makes the following allegations. The plaintiff repeatedly neglected or refused to accept "timely payments" tendered both before and after the commencement of foreclosure. It refused to respond to her legitimate inquiries about her account. The agents or employees of the plaintiff persisted in contacting her directly since August, 1997, even calling her late at night, even though she had informed the plaintiff earlier that she was represented by counsel and requested the plaintiff not to contact her directly. The CT Page 11102 agents or employees of the plaintiff intimidated or threatened her, using profanities on the phone. An agent or employee of the plaintiff told her on or about January, 1997, that the plaintiff company did not "care" whether her account was accurate when contacted by the defendant and her husband addressing the plaintiff's erroneous records regarding her mortgage payments. The defendant argues that the foregoing conduct constitutes unfair, unscrupulous and deceptive business practice in violation of CUTPA and has caused the defendant ascertainable losses and damages.
The plaintiff argues that because this count attacks its post-default conduct it does not relate to the making. validity or enforcement of the note and mortgage. In opposition, the defendant argues that she has pleaded sufficient facts to support the CUTPA claim.
None of the allegations made in this count relate to the making of the note and mortgage. that is, none have alleged any facts to show that the execution of the note and mortgage was tainted by some illegal acts or factors, such as fraud, misrepresentations, or incapacity. The allegations regarding the direct contact and the harassing or threatening phone calls also do not relate to the default. that is, they were not shown to be the cause of the default. The court agrees with the plaintiff that these allegations, which may be otherwise sufficient for an independent cause of action for violations of CUTPA, cannot form the basis of a counterclaim because they do not arise out of the foreclosure action. See Practice Book § 10-10; The Frederick Corp. v. Scheckter,
supra, Superior Court, Docket No. 084350.
The remaining allegations merit closer examination because they arguably may relate to the default. The defendant has also alleged that the plaintiff repeatedly neglected and refused to accept "timely' payments" due under the note and mortgage both "prior to" and after the commencement of the foreclosure action. Any claim that the plaintiff improperly refused to accept payments tendered after the commencement of foreclosure must be disregarded because it could not have related to the default. See 59 C.J.S., supra, § 514, p. 629 (tender of payments after commencement of foreclosure does not bar acceleration or foreclosure). Payments tendered before the commencement of foreclosure, on the other hand, may relate to the default. The defendant has not alleged, however, that the payments were properly tendered, that is, tendered in full amount as well as timely. See 59 C.J.S. supra, § 462, p. 554 ("the mortgagee must unconditionally accept the amount due when properly tendered," but refusal is reasonable upon honest belief that the tender is insufficient). Nor has she alleged that the payments were tendered before the debt was accelerated. See 59 C.J.S., supra. §§ 514, pp. 628-29 (tender before commencement of foreclosure action CT Page 11103 but after election to accelerate does not bar acceleration). 516, p. 634 ("[a]s a general rule, a debtor may not reinstate the debt by paying or tendering current arrearages after the debt has been accelerated"). The allegations here are not specific to show that the refusal to accept payments relate to the default in view of the plaintiff's argument that they attack only its post-default conduct.[6]
As for the allegation that an agent or employee of the plaintiff told her that the plaintiff company did not "care" whether her account was accurate when told of erroneous record keeping, the defendant has not alleged that the plaintiff miscalculated her mortgage payments and that the plaintiff wrongfully' declared a default based on its miscalculations. The defendant has not alleged facts to show the nature of the erroneous record keeping, which she alleges almost parenthetically. There is no allegation that the contact regarding erroneous record keeping was done prior to the declaration of default or acceleration, so it is not clear whether the alleged conduct of the plaintiff goes to the default. Favorable construction of the defendant's allegations does not involve filling a void or stretching the limit of reasonable inference.
This count is long on legal conclusions, but short on factual allegations that address the making of the note and mortgage or the default. The allegations made in this count may be sufficient for an independent cause of action for CUTPA violations, but the defendant has not alleged sufficient facts to support a CUTPA counterclaim that arises out of the same transaction that is the subject of the foreclosure action. The motion to strike this count is granted.[7]
2. Count Three
Count three of the counterclaim asserts a claim of negligent infliction of emotional distress. The defendant alleges the following facts in support of her claim. The plaintiff failed to respond to the defendant's "qualified written request" for a statement of her mortgage payments pursuant to General Statutes § 36a-781.[8] The plaintiff, through its employees or agents, persisted in contacting her directly regarding her default after having been requested not to be contacted directly but through her counsel in violation of the Fair Debt Collections Practice Act (FDCPA). 15 U.S.C. § 1692 et seq. The employees or agents of the plaintiff harassed and threatened her on the phone regarding her default. The plaintiff wrongfully, willfully and repeatedly refused to accept her timely tendered payments in violation of CUTPA.
The plaintiff argues that it cannot have breached a duty to protect the interest of its customers where none exists at common law between a CT Page 11104 lender and a borrower. The plaintiff relies on Dubinsky v. CiticorpMortgage, Inc., 48 Conn. App. 52, cert. denied, 244 Conn. 926, 714 A.2d 9
(1998), and Cooper v. Burby, Superior Court judicial district of Hartford-New Britain at Hartford, Docket No. 387563 (April 29, 1992, Satter, J.) (7 C.S.C.R. 591), for support of its argument. The defendant argues that the plaintiff misconstrues the case law and that the case law does not apply to her claim.
The court agrees with the defendant that the plaintiff has misconstrued the case law because the case law cited does not support the plaintiff's argument and does not address the defendant's allegations. Dubinsky v.Citicorp Mortgage, Inc., supra. 48 Conn. App. 58-60, stands for the proposition that at common law the mortgagee does not have a duty toward the mortgagor, under the implied covenant of good faith and fair dealing, to perform an accurate appraisal of the mortgaged property done for the benefit of the mortgagee. Cooper v. Burby, supra,7 C.S.C.R. 593. stands for the proposition that generally the mortgagee has no fiduciary duty to represent the interest of the mortgagor. SeeSouthbridge Associates, LLC v. Garofalo, supra, 53 Conn. App. 19
("[g]enerally there exists no fiduciary' relationship merely by virtue of a borrower lender relationship between a bank and its customer").
The case law cited by the plaintiff is inapposite because the defendant has not alleged under this count that the plaintiff has breached some fiduciary duty, or some dun' imposed under principles of common law, or some duty arising under the contractual provisions in the note and mortgage. The defendant alleges that the plaintiff failed to perform the (statutory') duty of providing the plaintiff with a statement of payments made on her account, as required under General Statutes § 36a-781. so the plaintiff's argument on grounds of the common law is inapposite. The case law on grounds of the common law relied on the plaintiff is also inapposite to the claims of tortious or unfair debt collection practices allegedly committed by the employees or agents of the plaintiff in violation of FDCPA. Nor is it apposite to the claims of unfair trade practice in violation of CUTPA. The case law relied on by the plaintiff is not, therefore, a proper ground for its motion to strike.
Because the plaintiff has not briefed any other ground with regard to this count. and the ground relied on and briefed is legally inadequate, the motion to strike this count is denied.[9]
3. Count Five
Count five of the counterclaim asserts a claim of violations of RESPA. based on the allegations made in the fifth special defense, for failure to comply with the various disclosure and servicing requirements under CT Page 11105 the act. The incorporated allegations state that the plaintiff failed to provide proper notice in violation of § 2605 of RESPA. failed to provide property notice of default and acceleration in violation of principles of common law and RESPA,[10] and failed to respond to her repeated "qualified written requests," pursuant to 12 U.S.C. § 2605
(e). The plaintiff seeks damages for the statutory violations pursuant to § 2605(f).
The plaintiff argues that this count should be stricken because violations of RESPA do not invalidate the note and mortgage, citingSecurity Pacific National Bank v. Robertson, supra, Superior Court, Docket No. 124622, and, therefore, cannot form the basis of a counterclaim in the foreclosure action. Alternatively, the plaintiff argues that the defendant has not alleged that the mortgage at issue is a federally related mortgage loan to support her claim of RESPA violations. In response, the defendant argues that the plaintiff has presented no case law to support its argument, that the case law presented is inapplicable, and that the plaintiff's alternative argument is "disingenuous."
Addressing the plaintiff's alternative argument first, the court finds that it is not a sufficient ground for the motion to strike. Even though the defendant has not expressly alleged that the mortgage at issue is a federally related mortgage within the meaning of RESPA, her allegations of RESPA violations imply that it is. See Lombard v. Edwards J. Peters,Jr., P.C., 252 Conn. 623, 626, 749 A.2d 630 (2000) ("[w]hat is necessarily implied [in an allegation] need not be expressly alleged").[11]
The court also disagrees with the plaintiff's argument that because RESPA violations cannot affect the validity or enforceability of the note and mortgage. that is. serve as a special defense to foreclosure, they cannot, ipso facto. form the basis of a counterclaim in mortgage foreclosure. The criteria are different between the two pleadings despite the common requirement that they relate to the making, validity or enforcement of the note and mortgage. The issue regarding a special defense is whether it bars foreclosure on the basis of the facts alleged therein that are consistent with the allegations of the complaint, such as the facts of discharge (accord and satisfaction, release, the statute of limitations and res judicata among others) or the facts of justification or excuse (duress, fraud, want of capacity among others). Practice Book § 10-50;[12] E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 83, pp. 243-45. The issue regarding a counterclaim, by comparison, is whether an otherwise independent cause of action asserted by the defendant against the plaintiff in the action before the court arises out of the same transaction that is the subject CT Page 11106 of the plaintiff's complaint. Practice Book § 10-10. If it does, it is a proper counterclaim; if not, the defendant's cause of action cannot be properly asserted as a counterclaim, but may be joined or consolidated with the plaintiff's action; see Practice Book §§ 10-21 through 10-24; or must be filed separately (if the joinder fails the same transaction test). See E. Stephenson, supra, § 85, p. 260.
The issue regarding this count is whether the alleged RESPA violations arise out of the same transaction that is the subject of the foreclosure action, that is, the execution of the note and mortgage and the subsequent default, not whether it bars foreclosure (which it cannot because only special defenses can bar foreclosure). The court notes. first, that although RESPA violations do not discharge the mortgage debt and provide no defense to mortgage foreclosure, they are actionable. See12 U.S.C. § 2605 (f);[13] Collins v. FMHA-USDA, 105 F.3d 1366, 1368
(11th Cir. 1997) (noting that several provisions of RESPA. including § 2605(f). explicitly provide for private civil remedies). Even though the alleged RESPA violations cannot affect the validity or enforceability of the note and mortgage; see 12 U.S.C. § 2615; they may relate to the making of the note and mortgage or the default.[14]
See 12 U.S.C. § 2605 (a) and (e).[15]
Because the grounds relied on and briefed by the plaintiff are legally inadequate, and the plaintiff has not briefed any other ground, its motion to strike this claim is denied.
4. Count Six
Count six of the counterclaim asserts a claim of breach of contract. Specifically. the defendant incorporates the following allegations. The plaintiff would have been current on her mortgage payment but for the plaintiff's improper refusal to accept her timely tendered payments both before and after the commencement of foreclosure. The plaintiff wrote to the defendant on February 28, 1997, advising her of a reinstatement figure of $3,573.58 to be paid by bank check by March 30, 1997. The defendant tendered the requisite reinstatement payment. The plaintiff refused to accept it, and issued another and larger reinstatement figure. The employees or agents of the plaintiff persisted in telephoning the defendant to threaten her, ignoring her request not to be contacted directly and disregarding her inquiries about her account. The defendant seeks damages for the plaintiff's breach of its contractual obligations.
The plaintiff argues that this count fails to allege compliance with all conditions precedent of the contracts alleged and, therefore, fails to state a cause of action for breach of contract. The plaintiff cites two Superior Court decisions, Weinberger v. Vernition Corp., Superior CT Page 11107 Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 103692 (May 4, 1993, Nigro, J.). and Merson v. Berkoft, Superior Court, judicial district of Stamford-Norwalk at Stamford. Docket No. 122617 (July 21, 19993, Rush, J.), to support its argument that the pleader must allege due performance of the conditions precedent of the contract in order to plead a claim for breach of contract.
The case law cited by the plaintiff is inapposite to this count of the counterclaim for breach of contract. Weinberger, citing General AccidentFire Life Assurance Corp. v. Margolis, 116 N.Y.S.2d 209, 201 (Sup. Ct., Kings Co. 1952). stands for the established principle of law that in order for a third party beneficiary to state a cause of action for breach of contract for the benefit of the beneficiary against the promissory, the beneficiary must plead due performance of the conditions I set by the promisee. The court in Weinberger granted the defendants' motion to strike the complaint because of the plaintiff's failure to plead satisfaction by the promisee of the conditions precedent to the contract for the benefit of the plaintiff as the third party beneficiary. The court Merson,
relying on Duksa v. Middletown, 192 Conn. 191, 197, 472 A.2d 1 (1984), granted the defendants' motion to strike the prayer for relief that seeks rescission of a sale of the assets of the plaintiff's business to the defendant on the ground that the plaintiff had failed to allege that he had restored or offered to restore the defendant to his former position as nearly as possible, which was required as a condition precedent to a rescission claim.
This counterclaim for breach of contract is different from the issues presented in the two Superior Court decisions. To the extent that the plaintiff intends to argue that the defendant's counterclaim for breach of contract is facially defective, it has not argued, let alone briefed, that the defendant has failed to plead a requisite element to make out a cause of action for breach of contract.[16]
Because the defendant has misstated the ground relied on by it and misconstrued the case law regarding the claim for breach of contract. and has briefed no other ground, the motion to strike this count is denied.
 II MOTION TO SEVER THE COUNTERCLAIM #152
In addition to counts two. three. five and six of the counterclaim, discussed above regarding the motion to strike, the plaintiff has asserted, under count one, violations of FDCPA. and, under count four. intentional infliction of emotional distress. Each count of the counterclaim requests damages, attorney's fees and costs for the alleged CT Page 11108 violations or breaches.
In the alternative, the plaintiff moves to sever the counterclaim from its foreclosure action, arguing that it is within the trial court's discretion to sever the counterclaim, an action at law involving many questions of fact triable to a jury, from its simple foreclosure action, an action in equity not triable to a jury. The plaintiff claims, "upon information and belief," that the defendant will seek a jury trial on her counterclaim.
In her objection to the motion to sever, the defendant claims that she has not sought a jury trial of her counterclaim and that she does not intend to do so. She argues also that her counterclaim arises out of the same transaction as the claims of her special defenses because the facts asserted in the counterclaim are entwined with those asserted in the special defenses.
The plaintiff argues. in its reply to the objection, that because the counterclaim attacks its post-default conduct, it is not related to the making. validity or enforcement of the note and mortgage and should, therefore, be severed from the foreclosure action. The plaintiff argues further that the defendant may seek testimony from her husband or other witnesses or even expert testimony to buttress her allegations of damages from the alleged infliction of emotional distress, asserted in the counterclaim, and that the plaintiff will counter such attempt with numerous evidentiary objections. The plaintiff argues that the procedural maneuvering will be time-consuming and will hinder the speedy adjudication of the foreclosure action.
"[I]n any case in which several causes of action are joined in the same complaint, or as matter of counterclaim or set-off in the answer, if it appears to the court that they cannot all be conveniently heard together, the court may order a separate trial of any such cause of action . . . General Statutes § 52-97; Solomon v. Gilmore, 248 Conn. 769, 772 n. 7, 731 A.2d 280 (1999). "When incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. . . . Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either part' — has a right to have the legal issues tried to the jury. . . . Because a counterclaim is an independent action . . . the question presented is whether the . . . counterclaim is essentially' legal or essentially equitable. . . . This analysis must be performed in the context of the [counterclaim] when read as a whole. . . . If, upon proper analysis, the trial court determines that the counterclaim is primarily legal, the defendant who asserts it is entitled, as matter of constitutional right, to a jury trial on the CT Page 11109 counterclaim." (Citations omitted; internal quotation marks omitted.)Connecticut National Bank v. Rytman, 241 Conn. 24. 53, 694 A.2d 1246
(1997) (regarding motion to strike counterclaim from jury list).
There is no question that all six counts of the counterclaim are legal in nature, stating causes of action for damages cognizable at law. The defendant is, therefore, entitled, as a matter of constitutional right to a jury trial on her counterclaim. Even though the defendant has denied any' intention to seek a jury trial on her counterclaim, she is nonetheless free to claim the counterclaim to the jury list until she has waived the right to a jury trial. The record does not show that she has waived her right, and the court must preserve her right until she has moved for a bench trial on her counterclaim.
"In the interests of preserving both the [defendant's] right to a jury trial on the counterclaim and the plaintiff's right to expeditious resolution of the foreclosure action, the trial court has discretion to retain the foreclosure portion of the case on the court side list, while placing the counterclaim on the jury list. . . . In exercising that discretion, the trial court will necessarily have to weigh the possible preclusive consequences that may attach to a decision on the merits of the foreclosure action in advance of a jury trial on the counterclaim." Id., 54. "Factors to consider are the volume and complexity of the issues, the nature of the evidence involved in each action, and pleading issues."Federal National Mortgage Assn. v. Jessup, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 169417 (December 8, 2000, Hickey, J.); Middletown v. 180 Johnson Road, Superior Court, judicial district of Middlesex at Middletown, Docket No. 082578 (January 6, 1998, Fineberg, J.).
In addition to the preservation of the defendant's right to a jury trial on her counterclaim absent a formal waiver, at least two factors weigh in favor of severing the counterclaim. First, the counts of the foreclosure seek only damages cognizable at law, which are not part of the mortgage debt, and for that reason cannot affect the equitable remedy' of strict foreclosure sought in the foreclosure action. SeeSaunders v. Stigers, 62 Conn. App. 138, 141-42, ___ A.2d ___ (2001) (affirming the trial court's decision not to consider the counterclaim, based on alleged FDCPA violations, in the same proceeding as the foreclosure action because the damages sought on the counterclaim are not part of the mortgage debt and cannot affect the judgment of strict foreclosure). The counterclaim, by its definition, cannot bar foreclosure because it seeks damages arising out of the same transaction that is the foreclosure action; only valid special defenses can bar foreclosure.
Second, the causes of action stated in the counterclaim, namely, CT Page 11110 violations of FDCPA, RESPA, CUTPA (if repleaded), intentional and negligent infliction of emotional distress, and breach of contract, unlike the straightforward issue of liability in a foreclosure action, would be inappropriate for summary adjudication because they would necessarily involve many questions of fact regarding motive, intent or negligence and therefore require a trial in the ordinary manner. SeeSuarez v. Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994) (summary judgment procedure is particularly inappropriate for questions of motive, intent and subjective feelings); Fogarty v. Rashaw,193 Conn. 442, 446, 476 A.2d 582 (1984) (issues of negligence are generally not susceptible of summary adjudication).[17] Trying the counterclaim in the same proceeding as the foreclosure action will undoubtedly hamper the speedy resolution of the foreclosure action.
The motion to sever the counterclaim from the foreclosure action is granted.
 CONCLUSION
The plaintiff's motion to strike is granted as to the fifth special defense and count two of the counterclaim, but denied as to the third, fifth and six counts of the counterclaim. The plaintiff's motion to sever the counterclaim from the foreclosure action is granted.
Kevin E. Booth Judge of the Superior Court