[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' SPECIAL DEFENSES AND COUNTERCLAIMS
 I STATEMENT OF THE CASE
The plaintiff, Ocwen Federal Bank, brought this foreclosure action on November 8, 1999, against the defendants, Jorge and Catherine Rivas (the Rivases), and Lucille Dellmarggio (Dellmarggio), alleging the following facts. On or about October 29, 1997, the Rivases executed and delivered a note to Ford Consumer Finance Company that provided for a loan to them in the amount of $74,970. On the same day, the Rivases also executed and delivered a mortgage on their property in Stratford, Connecticut, to Ford Consumer Finance Company to secure the note. The mortgage was duly recorded on November 5, 1997, in the Stratford land records. The plaintiff is the owner and holder of the note and mortgage pursuant to an assignment. The defendants have defaulted on the note. The plaintiff has CT Page 2481 chosen to accelerate the balance due on the note and to foreclose on the mortgage. Catherine Rivas and Dellmarggio are the owners of the property as a result of a quitclaim deed recorded in the land records on September 2, 1999. The plaintiff seeks foreclosure and possession of the property, attorney's fees, interest, court costs and a deficiency judgment.
On August 20, 2001, the defendants filed their amended answer in which they assert six special defenses and three counterclaims.[1] Pending before the court is the plaintiff's motion to strike filed on August 9, 2001. The defendants filed their objection to the motion on August 27, 2001, and their memorandum in opposition to the motion on August 28, 2001. Both parties filed supplemental memoranda in support of their respective positions, the plaintiff on October 3, 2001, and the defendants on October 9 and October 16, 2001.
In their special defenses, the defendants assert numerous grievances regarding the plaintiff's conduct that interrelate and overlap. The legal claims are not asserted in what may be characterized as a pristine or succinct pleading format, but the plaintiff has foregone a request to revise, seeking instead to test the somewhat jumbled allegations through a motion to strike.
The factual claims forming the basis of all the special defenses may be divided into three, general groups of allegations. First, the defendants claim that the attorney who represented them in the mortgage transaction also represented, Ford Consumer Finance Company, the originating financing company. This joint representation allegedly resulted in a conflict of interest. (First Special Defense, parags. 9-17; 29, 30). This "conflict" also existed with the broker and the lender's notary. (First Special Defense, parags. 2, 15, 33).
The second group of allegations is that the financing company represented to the defendants that the loan documents were proper and in order, but they contained false and misleading information. These false representations included information that a sale of the property did not require an enforceable written contract; that the mortgaged property would be the defendant's principal residence; that the defendants executed the documents truthfully and as their free act and deed; that the transaction did not included payment of existing tax liens; and that the defendants received copies of the transaction documents. (First Special Defense, parag. 20). The defendants also claim that the lender's attorney or agent did not explain to them and they failed to appreciate that the loan involved a balloon payment of $72,978 due on October 29, 2000. (First Special Defense, parags. 23-26).
The third group of allegations concerns an alleged workout of the debt CT Page 2482 that the plaintiff failed to do. More specifically, the defendants claim that the plaintiff agreed to a reduced pay-off amount to avoid foreclosure through a sale of the mortgaged property to a third party. This sale did not occur because the plaintiff failed to attend the closing. (First Special Defense, parags. 32-51).
Among these groups of claims, the defendants assert other grievances: they were required to pay fees to the closing attorney, when the finance company represented that it would pay them (First Special Defense, para. 12); the defendant's were not given documents necessary to exercise their rights of recission (First Special Defense, parags. 27, 28); the foreclosure action "scheme" to exact a "penalty" through the collection of unfair attorney fees (First Special Defense, para., 52); and they have suffered "severe emotional harm" as a result of the plaintiff's "unfair debt collection practices." (First Special Defense, para., 53).
Based on these factual claims, the defendants assert six, special defenses: unclean hands; fraudulent, negligent and/or innocent misrepresentations; equitable estoppel; breach of the implied covenant of good faith and fair dealing; unconscionability; and mistake. The obvious problem with the format of this pleading is that the defendants have failed to delineate which "group" of facts support what specific special defense. Nevertheless, as noted earlier, no request to revise has been filed. When moving to strike a particular special defense, the plaintiff has chosen to select which "group" of allegations to attack, but this approach is obviously deficient. Because all of these factual claims are incorporated by reference into the substantive defenses, if any part or group of the factual claims supports a particular defense then the motion to strike that defense must be denied.
The defendants also assert three counts by way of "counterclaim, set off and recoupment." The first count alleges that the plaintiff "breached its fiduciary duty to the defendants" by failing to consummate a sale of the mortgage for a discounted amount after agreeing to the sale. The second count alleges that the plaintiff's actions violate the implied covenant of good faith and fair dealing. The second count alleges that the plaintiff's actions violate the Connecticut Unfair Trad Practices Act, Sections 42-110 et seq. ("CUTPA").
For the following reasons, the motion to strike is granted as to the Fourth and Sixth Special Defenses and all counts of the Counterclaim. The motion to strike is denied as to First, Second, Third and Fifth Special Defenses.
 II CT Page 2483 DISCUSSION A STANDARD OF REVIEW
Practice Book § 10-39(a)(5) provides that a motion to strike may be used to contest "the legal sufficiency of any answer to any complaint, counterclaim . . . or any part of that answer including any special defenses. . . ." See also Nowak v. Nowak, 175 Conn. 112, 116,394 A.2d 716 (1978); Girard v. Weiss, 43 Conn. App. 397, 417,682 A.2d 1078, cert. denied, 239 Conn. 946, 686 A.2d 121 (1996). "In ruling on a motion to strike, the trial court [is obligated] to take the facts to be those alleged in the special defenses and to construe the defenses in a manner most favorable to sustaining their legal sufficiency." Connecticut National Bank v. Douglas, 221 Conn. 530, 536,606 A.2d 684 (1992).
Practice Book § 10-50 delineates the boundaries of special defenses, stating, in pertinent part: "No facts maybe proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction . . . duress, fraud . . . must be specially pleaded." "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint, but demonstrate . . . that the plaintiff has no cause of action." (Internal quotation marks omitted.) Danbury v. Dana InvestmentCorp., 249 Conn. 1, 17, 730 A.2d 1128 (1999).
"At common law, the only defenses to [a foreclosure action] would have been payment, discharge, release or satisfaction . . . or if there had never been a valid lien. . . . Moreover, our courts have permitted several equitable defenses to a foreclosure action. If the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had. . . . Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Citations omitted; internal quotation marks omitted.) SouthbridgeAssociates, LLC v. Garofalo, 53 Conn. App. 11, 15-16, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). The doctrine of unclean hands is also a valid special defense to a foreclosure action. SeeThompson v. Orcutt, 257 Conn. 301, 777 A.2d 670 (2001).
 B CT Page 2484 SPECIAL DEFENSES I Statute of Frauds
As a broad, general attack, the plaintiff claims that all of the defendants' special defenses should be stricken because of the statute of frauds.[2] Part of the defendants' claims involve a work out agreement that was breached by the plaintiff. The plaintiff contends that in order for this agreement to form the basis of a special defense, the statute of frauds requires it to be in writing. The first problem with this argument is that as previously explained, all of the factual claims supporting the special defenses are not premised on the group of allegations concerning the failure to comply with the alleged forbearance agreement. The general rule is that a motion to strike may not be directed at individual paragraphs of a pleading. See Moss v. Ledge Associates, LLC v. FirestoneBuilding Products Co., Superior Court, judicial district of Norwalk-Stamford Stamford at Stamford, Docket No. 170167 (October 27, 1999, Karazin, J.); Kovacs v. Kasper, 41 Conn. Sup. 225, 226, 565 A.2d 18
(1989) ("[I]f a motion to strike is directed to the entire complaint, the motion must fail if any of the . . . claims are legally sufficient.")
The second problem is that the statute of frauds claim is inapplicable to a special defense that is not seeking to enforce an oral agreement, but is merely relying on the agreement to invoke defenses within the court's equitable jurisdiction. Willow Funding Co., L.P. v. GrencomAssociates, 63 Conn. App. 832, 847-78, 779, A.2d 174 (2001). "A party that invokes a court's equitable jurisdiction by filing such an action for foreclosure necessarily invites the court to undertake . . . an inquiry [into equitable principles]." Id., 849. "[W]e hold that the statute of frauds, in equity, may in proper circumstances be converted into a more flexible inquiry into an equitable remedy that reflects a weighing of the rights of the parties." Id., 850.
Therefore, none of the defendants' special defenses shall be stricken on statute of frauds grounds.
 2 First Special Defense Unclean Hands
In their first special defense, the defendants assert that the plaintiffs cannot bring their suit in equity because they have "unclean CT Page 2485 hands." In support of the motion to strike this special defense, the plaintiff relies on lower court cases indicating that the doctrine of unclean hands is inapplicable in foreclosure actions. See, e.g.,Mechanics Farmers Savings Bank, FSB v. Delco Development Co., Inc.,43 Conn. Sup. 408, 420, 656 A.2d 1075 (1993). However, this view has been expressly rejected by appellate court precedent holding that the unclean hands doctrine may be asserted as a special defense in a foreclosure action. See, Thompson v. Orcutt, supra, 257 Conn. 301; Willow FundingCo., L.P. v. Grencom Associates, supra, 63 Conn. App. 832.
"It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands." (Internal quotation marks omitted.) Thompson v. Orcutt, supra, 257 Conn. 310. "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Internal quotation marks omitted.) Id. "The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation." Polverari v. Peatt, 29 Conn. App. 191,202, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 116 (1992).
"Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] character element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury must also be intentional . . . [W]ilful . . . conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citations omitted; internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518,533, 542 A.2d 711 (1988).
The defendants make numerous allegations that the plaintiff and its predecessors were unfair, inequitable and dishonest in their dealings with the defendants. As discussed below, these allegations include a claim that fraud was committed before the execution of the load documents. The court cannot say as a matter of law that these allegations if true would not be sufficient for a court of equity to find wilful misconduct establishing unclean hands.
 3 CT Page 2486 SECOND SPECIAL DEFENSE MISREPRESENTATION
In their second special defense, the defendants allege that the plaintiff should be bared from enforcing the terms of the note and the mortgage because the plaintiff induced them to enter the transaction by making fraudulent, negligent or innocent misrepresentations to them. The defendants also claim that they were "unsophisticated lay person[s]" at-the time they signed the note.
"The essential elements of a fraud action are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Billington v. Billington, 220 Conn. 212,217, 595 A.2d 1377 (1991). "Mere nondisclosure, however, does not ordinarily amount to fraud . . . it will arise from such a source under exceptional circumstances. . . . to constitute fraud on that ground, there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak." Egan v. Hudson Nut Products, 142 Conn. 344, 347, 144 A.2d 213
(1955). A duty to speak is imposed when there is a relationship of trust and confidence or a fiduciary relationship between the parties. Id. However there is ordinarily no fiduciary relationship or fiduciary duty between a borrower and a lender. Southbridge Associates, LLC v.Garofalo, 53 Conn. App. 11, 728 A.2d 1114 (1999).
The defendants have alleged the following: that the originating lender or its agents told the defendants that the loan documents were necessary to process the loan and were in proper order" (para. 18); that the loan documents contained "false representations and misleading information" (para. 20); that the lender or its agents knew of the falsify (para. 20); and that the defendant Catherine Rivas "relied on the promises and representations made to her by Lender's attorney in deciding to go forward with the transaction." (para. 21). As previously stated, these allegations of fraud are not examples of pristine pleading. For example, although there is no express allegation that the representations were made with the fraudulent intent to induce the defendants to execute the loan documents, there is a general claim that the mortgage was procured through "misrepresentations that were fraudulent" and knowingly made (para. 56). In this regard, case law indicates that in some instances "[w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Internal quotation marks omitted.) Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 1089 (1998). CT Page 2487
In a similar vein, although the defendants claim that they did not understand and appreciate the existence of the balloon payment of the mortgage note because the attorney did not explain it to them, the defendants have not alleged that any misrepresentations were made to them regarding the balloon payment. A fraud is not committed merely because the party signing a. contract alleges that he misunderstood the terms of the contract. "If the [party] did not understand . . . after reading the note, it was their duty to inquire . . . before signing the note." Bankof New Haven v. Liner, supra, Superior Court, Docket No. 034516. "Where a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract, he is deemed to have assumed the risk of a mistake." PacelliBrothers Transportation, Inc. v. Pacelli, 189 Conn. 401, 408, 456 A.2d 325
(1983). "The general rule is that when a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so. . . . Fraud, however, is an exception to the above general rule." (Internal quotation marks omitted.) AB Small Business Investment v. Husser, Superior Court, judicial district of Litchfield, Docket No. 065741 (November 9, 1995,Pickett, J.).
Nevertheless, on a motion to strike, the court's charge is not to resolve the merits of the allegations of fraud, but only to evaluate whether the alleged facts, assuming them to be true, assert a legally sufficient defense to a foreclosure action. The court finds that the defendants have met this burden and that the motion to strike the second special defense should be denied.
 4 Second Special Defense Negligent and Innocent Misrepresentation
The defendants appear to rest their claims of negligent and innocent misrepresentation on the same factual predicates as their allegations of fraudulent misrepresentation.[3] A party asserting a claim for negligent misrepresentation must allege: 1) a false representation was made to the party as a statement of fact, 2) it was made for the guidance of the party, 3) the party other party making the representation failed to exercise reasonable care in obtaining or communicating the information, and 4) the pleading party justifiably relied on the representation to its detriment. Beverly Hill Concepts v. Shatz, Ribicoffand Cocton, 247 Conn. 48, 57, 717 A.2d 724 (1998). The Supreme Court has also held that "even an innocent misrepresentation of fact may be CT Page 2488 actionable if the declarant has the means of knowing, ought to know or has a duty of knowing the truth." D'Ulisse-Cupo v. Board of Directors ofNotre Dame High School, 202 Conn. 206, 217, 520 A.2d 217 (1989).
In this case, the defendants do not allege that the plaintiff failed to exercise reasonable care in obtaining or communicating the information to them. Our Supreme Court, however, has determined that "[A]lthough numerous courts have quoted directly from the Restatement Second in describing the elements of an action for negligent misrepresentation, we have discovered no cases . . . in which a court has struck a claim for negligent misrepresentation merely because the complaint lacked such an allegation." Id., 219. In reviewing the issue, especially in light of the court's conclusion that a sufficient fraudulent misrepresentation defense has been asserted, the court also concludes that the plaintiff's motion to strike the special defense of negligent misrepresentation should be denied.
"In terms of innocent misrepresentation, it is an element of negligent misrepresentation . . . Accordingly, the motion to strike having been denied as to negligent misrepresentation, it is denied as to innocent misrepresentation." Federal National Mortgage Assn. v. Jessup, Superior Court, judicial district of Stamford at Stamford, Docket No 169417 (August 3, 1999, Hickey, J.).
 5 Third Special Defense Equitable Estoppel
Again, the defendants rest their special defense of equitable estoppel on their allegations that the plaintiff misrepresented the terms of the contract. "[A]ny claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on these facts, thereby incurring some injury." (Internal quotation marks omitted.) Eis v. Meyer,213 Conn. 29, 34, 566 A.2d 422 (1989).
As previously discussed, the defendants adequately pleaded that the plain misrepresentations to them, and that these misrepresentations induced them to sign the mortgage and note. Thus, the plaintiff's motion to strike the special defense of equitable estoppel is also denied.
 6 CT Page 2489 Fourth Special Defense Covenant of Good Faith
In the fourth special defense, the defendants allege that the plaintiff is barred from enforcing the note and mortgage because the lender breached the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party [in the performance of every contract]. . . . Essentially, it is a rule of construction designed to fulfill the reasonable expectations of the contracting pates as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 567, 479 A.2d 781 (1984). Additionally, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 501 (1992).
As previously discussed, because the defendants have not specifically delineated what group of allegations relate to or support which special defense, the court must view all the factual claims as supporting each defense. Nevertheless, even with this most expansive evaluation of the defendants' defenses the court cannot identify how they have alleged post-contract conduct on the part of the plaintiff that would constitute a violation of the implied covenant of good faith and fair dealing. The only post-contract conduct contested by the defendants concerns the plaintiff's failure to consummate an agreement to allow a discounted sale or assumption of the mortgage note and generalized claims that the foreclosure action was instituted to exact excessive or punitive attorneys' fees.
As to the first issue concerning the plaintiff's failure to sell the mortgage note, the court finds persuasive and controlling the reasoning of the Appellate Court in Southbridge Associates, LLC v. Garofalo,53 Conn. App. 11, 17, 728 A.2d 1114 (1999): "The loan documents do not contain a provision requiring a holder of the notes and mortgages to negotiate or sell the notes . . . Moreover, the defendants do not cite nor can we find any authority requiring a holder of a note and mortgage to sell them at a discount to the mortgager under an implied covenant of good faith and fair dealing when the mortgagor defaults." The plaintiff is not legally required under the note and mortgage to accept less then full payment of the debt. Therefore, the defendants' disappointment that the plaintiff failed to accept a discounted amount of the debt as full satisfaction is not a failed expectation flowing from the loan CT Page 2490 documents. This is not to say that a forbearance agreement supported by consideration is unenforceable or that a court of equity cannot look at a lender's conduct to evaluate what orders are appropriate. Compare,Citicorp Mortgage, Inc. v. Upton, 42 Conn. Sup. 302 616 A.2d 1179 (1992) (refusal to accept a deed in lieu of foreclosure justified an equitable reduction of a deficiency judgment on the ground of a violation of the duty of good faith and fair dealing). The point here is that a covenant should not be implied into a contract that is at odds with the express terms of the pates' bargain.
The defendants claim that the foreclosure action was instituted to exact punitive attorney fees fails as a matter of law because no fees are recoverable in the foreclosure unless found reasonable after review by the court. See generally, Danbury v. Dana Investment Corp., 249 Conn. 1,16, 703 A.2d 1128 (1999) (claim that action was instituted in a manner to exact excessive fees may not be raised as a special defense.) The defendants' further contention that the plaintiff has violated the implied covenant of good faith and fair dealing by engaging in "unfair debt collection practices" is not supported by any factual allegations and is merely the assertion of a bald legal conclusion. Therefore, the motion to grant the fourth special defense should be granted.
 7 Fifth Special Defense Unconscionability
In the fifth special defense, the defendants allege that the plaintiff is barred from enforcing the terms of the note and mortgage because it would be unconscionable to allow it to do so. "[T]here are two elements of unconscionability: unfair surprise and oppression. The element of unfair surprise has frequently been termed . . . as `procedural unconscionability' and is implicated by bargaining improprieties in the contract formation process. The element of oppression has been termed "substantive unconscionability' and is implicated by overly harsh contract terms." Emlee Equipment Leasing Corp. v. WaterburyTransmission, Inc., 31 Conn. App. 455, 463 n. 12, 626 A.2d 307 (1993). "[T]he basic test is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." (Internal quotation marks omitted.) Family Financial Services, Inc. v.Spencer, 41 Conn. App. 754, 763, 677 A.2d 479 (1996).
In this case, the defendants allege that the lender engaged in CT Page 2491 improprieties in the formation of the loan in that the lender, by knowingly making false representations, induced the defendants to execute the loan documents "on terms that were not fair, reasonable, nor fully. disclosed and transmitted in writing to them, nor in a manner that could be reasonable understood by them." (Para. 29.) The defendant's also allege that the lender knew that they were unsophisticated lay persons (Parags. 16-17), and that the mortgage note contained a balloon payment that they did not understand or appreciate. (Parags. 23-26). On these allegations, the court concludes that the motion to strike the unconscionability defense should be denied.
 8 Sixth Special Defense Mistake
In their sixth special defense, the defendants allege that the defense of mistake bars the plaintiff from enforcing the terms of the note and mortgage. The plaintiff does not specifically address the inadequacies of this special defense, except as part of the general claim that the special defense is legally insufficient because it only asserts a legal conclusion. In this respect, the plaintiff's argument is correct. All that is alleged in the sixth special defense is that "the plaintiff is barred from recovery and the relief it seeks because the foreclosure [documents] prepared by the lender, through its agents, and executed by the defendant were executed as a result of mistake."
No where in any of the defendants' extensive allegations is it explained exactly what mistake was committed by whom. A mutual mistake by the pates may create a defense to a contract action, but it is entirely unclear by the defendants' pleadings whether they are claiming this type of mistake or some other. The defense simply is a statement of a legal conclusion without any factual basis or clarification, and therefore, should be stricken.
 C Counterclaims One Whether the Counterclaims Are Transactionally Related To The Foreclosure Action
A counterclaim is "a cause of action existing in favor of a defendant CT Page 2492 against a plaintiff that a defendant pleads to diminish, defeat or otherwise affect a plaintiff's claim and also allows recovery by the defendant." (Internal quotation marks omitted.) Home Oil Co. v. Todd,195 Conn. 333, 341, 487 A.2d 1095 (1985). Generally, Practice Book §10-10 delineates the boundaries of counterclaims. It provides that "in any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint." Practice Book § 10-10.
"The transaction test [of § 10-10] is one of practicality and the trial court's determination as to whether that test has been met ought not be disturbed except for an abuse of discretion." (Internal quotation marks omitted.) Southbridge Assoc. LLC v. Garofalo, supra,53 Conn. App. 21. "[T]he `transaction' [at issue in a foreclosure action] is the defendants' execution of the note and mortgage in favor of the plaintiff, and the defendants' subsequent default. "A counterclaim brought by a defendant in a foreclosure action, like a special defense, must address the making, validity or enforcement of the note or mortgage."Ocwen Federal Bank, FSB v. Stawski, Superior Court, judicial district of New London at New London, Docket No. 552683 (April 26, 2000, Martin,J.); accord, New Haven Savings Bank v. LaPlace, 66 Conn. App. 1, 9,783 A.2d 1174, cert. denied, 258 Conn. 942 (2001) (affirming the trial court's decision granting summary judgment against the defendant on the ground that his counterclaims were not related to the making, validity of enforcement of the note.)
The plaintiff's general attack against the counterclaims, especially the first and third counterclaims, is that they are not transactionally related to the complaint under Practice Book § 10-10 because they are premised on an alleged agreement to sell the mortgage, which is unrelated to the making, validity or enforcement of the mortgage. In this particular case, the defendants expressly allege that the agreement was reached in order to avoid foreclosure. Consequently, it would appear that such an agreement so impacts the plaintiff's ability to "enforce" its rights under the mortgage that a wrongful violation of the agreement could be asserted as a special defense. See generally, Willow FundingCo., L.P. v. Grencom Associates, supra, 63 Conn. 832 (a binding agreement to refinance the debt may form the basis for a special defense and a counterclaim in a foreclosure action).[4] Nevertheless, because the court concludes that the counterclaims must be stricken on their merits, the court declines to resolve definitively this issue involving Practice Book § 10-10.
 2 CT Page 2493 First Count-Breach of Fiduciary Duty
In their first counterclaim, the defendants allege that the plaintiff agreed to sell the mortgage for a discounted amount, but the plaintiff failed to attend arranged closing and thereby "breached its fiduciary duty to the defendants". (First Counterclaim, para. 60). As a result of this breach the defendants claim damages.
The plaintiff has moved to strike this counterclaim on the ground that the defendants fail to allege that the agreement to sell the mortgage was in writing in compliance with the statute of frauds, General Statutes § 52-550. See generally, First Federal SL v. Chappell, Superior Court, judicial district of Tolland at Rockville, Docket No. 9661212 (Rittenband, J., January 3, 1999) ("An assignment of mortgage and/or an agreement to assume a mortgage is certainly an interest in land. Therefore, the statute of frauds applies.") The plaintiff's position has merit. The defendants only response to this position is that the statute of frauds does not apply because there is no counterclaim "alleging a breach of contract." Memorandum of Law in Opposition To Motion To Strike, p. 14.
It appears that the defendants are alleging that this "fiduciary" responsibility that has been breached flows from the mortgage and note itself. However, the defendants have not alleged any special circumstances to avoid the general rule A that a lender in a loan transaction does not-engage in a relationship with the borrower that creates legally cognizable, fiduciary duties. "A lender has the right to further its own interest in a mortgage transaction and is not under a duty to represent the customer's interest . . . Generally there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer." (Internal quotation marks omitted.)Southbridge Associates, LLC v. Garofalo, supra, 53 Conn. App. 19. The motion to strike the first counterclaim should therefore be granted.
 3 Second Count — Breach of Covenant of Good Faith And Fair Dealing
The plaintiff first seeks to strike the second count of the counterclaim on the ground that the claim is barred by the applicable statute of limitations. Generally, "[a] claim that an action is barred by lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike"; Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993). The plaintiff has not identified any exceptions to this rule that are applicable here. CT Page 2494
Nevertheless, for the reasons discussed by the court in striking the fourth special defense, the court further concludes that this counterclaim based on the implied covenant of good faith and fair dealing must also be stricken. The court agrees that under some circumstances, an "equitable" defense may be asserted based on a lender's behavior regarding a work-out or forbearance arrangement. However, the court disagrees that a lender's refusal or failure to consummate such an arrangement creates a "legal" claim under the mortgage note itself. As previously stated, the implied covenant good faith and fair dealing "cannot be applied to achieve a result contrary to the clearly expressed terms of a contract . . ." Magna v. Anaconda Industries, Inc., supra,193 Conn. 567. Consequently, a borrower cannot look to an implied
covenant and require a lender to accept less than the full amount owed contrary to the express terms of the loan documents. Such an expectation does not reasonable flow from the terms of the note and mortgage. Thus this court's reasoning supports the result, but not the basis of the holding in Citicorp Mortgage, Inc. v. Upton, supra, 42 Conn. Sup. 302, which relied on the implied covenant of good faith to reduce the deficiency judgment awarded to the foreclosing mortgage holder because of the lender's refusal to accept a deed in lieu of foreclosure. This specific result may be based on some other applicable legal or equitable basis, but not on an implied covenant theory. See generally; New HavenSavings Bank v. LaPlace, supra, 66 Conn. 1, 10 (noting that the Appellate Court has found that "special defenses and counterclaims alleging a breach of an implied covenant of good faith and fair dealing and a breach of fiduciary duty are not equitable defenses to a mortgage foreclosure.")
 4 Third Count-Violation of the CUTPA
"It is well settled that in determining whether a practice violates CUTPA [Connecticut courts] have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice . . . offends public policy as it has been established by the statutes, the common law or otherwise . . . (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businessmen]." (Internal quotation marks omitted.) Fink v.Goldenbock, 238 Conn. 183, 215, 680 A.2d 1243 (1996). "All three criteria do not have to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent, it meets all three." (Internal quotation marks omitted.) Id. In their counterclaim, the defendants CT Page 2495 allege that the plaintiff's conduct was "immoral, unethical, oppressive, unfair and deceptive." Therefore, they are relying on the second prong of the cigarette rule. As to the second prong, "an act or practice is deceptive if three conditions are met. First, there must be a representation, omission, or other practice, likely to mislead consumers. Second, the consumer must interpret the message reasonably under the circumstances. Third, the misleading representation, omission or practice must be material — that is, likely to affect consumer decisions or conduct." (Internal quotation marks omitted.) Caldor Inc.v. Heslin, 215 Conn. 590, 597, 577 A.2d 1009 (1990), cert. denied,419 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1053 (1991).
In the third count of the counterclaim, the defendants allege that "[b]y arranging for a settlement and then failing to show up at the closing, the plaintiff engaged in immoral, unethical, oppressive, unfair and deceptive practices and conduct concerning the entrepreneurial or commercial aspects of lawyering. . . ." According the defendants, this conduct violates CUTPA.
After careful consideration of the criteria for a CUTPA claim, the court concludes that on this record, this counterclaim merely asserts a breach of an agreement and does not allege sufficient facts to state a cause of action under CUTPA. More specifically, the defendants have only described a work-out agreement that was breached, and as alleged, the defendants have failed to indicate immoral, unethical, oppressive or unscrupulous conduct to support a CUTPA claim. A simple breach of an agreement, without more, does not amount to a CUTPA violation, which requires more substantial aggravating circumstances.
The defendants further argue that their allegations of fraud support their CUTPA claim as there allegations may be viewed as being incorporated into the counterclaim by reference. In this respect, the plaintiffs also move to strike this claim on the ground that it is barred by the three-year statute of limitations of General Statutes Section42-110g (1). As previously stated, ordinarily the statute of limitations cannot be raised through a motion to strike . . . "In two limited situations, however, we will allow the use of a motion to strike to raise the defense of the statute of limitations. The first is when [t]he parties agree that the complaint sets forth all the facts pertinent to the question whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to strike] instead of by answer The second is where a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right — it is a limitation of the liability itself as created, and not of the remedy alone." (Citation CT Page 2496 omitted; internal quotation marks omitted.) Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993).
Both exceptions apply here. The pates agree that the defendants' allegations of fraud took place in 1997 as part of the making and execution of the loan documents. Second, CUTPA is a statutory cause of action which did not exist at common law, and at least one case has found that the CUTPA statute of limitations so qualifies the statutory right that a failure to comply with the limitation period may be raised by a motion to strike. Matza v. West, Superior Court, judicial district of Waterbury, docket No. 160324 (July 9, 2001, Rogers, J).
Section 42-110g (1) clearly states: "An action under this section may not be brought more than three years after the occurrence of a violation of this chapter." In the present case, there is no dispute between the parties that the allegations of fraud took place prior to the signing of the note on October 29, 1997. The counterclaims were initially filed in July 2001, well beyond the three-year limitation period.
Appreciating the untimeliness of the CUTPA claim, the defendants contend that the limitation period has been extendedty the plaintiffs "continuing course of conduct." The court finds this contention to be meritless. The defendants have not alleged any subsequent, wrongful act of the plain that can be fairly related to the prior conduct within the limitation period; and the defendants' continuing course of conduct argument is premised on the claim that the plaintiff owed the defendants fiduciary duties. As the court previously discussed, the plaintiff and its predecessors in interest did not owe fiduciary duties to the defendants. See, Blanchette v. Barrett, 229 Conn. 256, 275, 640 A.2d 74
(1994) ("Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the pates giving rise to such a continuing duty or some later wrongful conduct of a defendant related to a prior act.")
 III CONCLUSION
Therefore, for the foregoing reasons the plaintiff's motion to strike is granted as to the Fourth Special Defense, the Sixth Special Defense and all of the counts of the Counterclaim. The motion to strike isdenied as to First Special Defense, the Second Special Defense, the Third Special Defense, and the Fifth Special Defense.
So ordered 21st this day of February 2002. CT Page 2497
STEVENS, J.